UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WINE AND SPIRITS RETAILERS, INC. and JOHN HARONIAN, Plaintiffs | : | |
| v. | : | C.A. NO. 04-418T |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and JEFFREY J. GREER, in his capacity as Associate Director of the Rhode Island Department of Business, and the UNITED INDEPENDENT LIQUOR RETAILERS OF RHODE ISLAND, Defendants | : | |

**OBJECTION OF UILR TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The United Independent Liquor Retailers of Rhode Island ("UILR") hereby objects to Plaintiffs' Motion for a Preliminary Injunction on the grounds set forth in the accompanying memorandum of law.

Respectfully submitted,

UNITED INDEPENDENT LIQUOR RETAILERS OF RHODE ISLAND

By its attorney,

Joseph S. Larisa, Jr., Esq. #4113
Larisa Law and Consulting, LLC
One Citizens Plaza, Suite 1100
Providence, RI 02903
(401) 743-4700
(401) 633-7296 (fax)

DATED: March 14, 2005

21

## CERTIFICATION

I hereby certify that I sent by first class mail postage prepaid and email in pdf format a true copy of the attached Objection on the 14th day of March 2005 to the following:

Rebecca Tedford Partington #3890
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Robert J. Roughsedge, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736

UNITED STATES DISTRICT C( 'RT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WINE AND SPIRITS RETAILERS, INC. and JOHN HARONIAN, Plaintiffs | : | |
| v. | : | C.A. NO. 04-418T |
| STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, and JEFFREY J. GREER, in his capacity as Associate Director of the Rhode Island Department of Business, and the UNITED INDEPENDENT LIQUOR RETAILERS OF RHODE ISLAND Defendants | : | |

**MEMORANDUM OF UILR IN SUPPORT OF ITS OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The United Independent Liquor Retailers of Rhode Island ("UILR") submit this memorandum of law in support of their objection to Plaintiffs' motion for a preliminary injunction. In passing the subject statutes (the "Act") last year, the Rhode Island General Assembly sided with the UILR over Plaintiffs.[1] Having lost the policy battle, Plaintiffs now belatedly demand an injunction, premised on a First Amendment argument claiming an impairment of protected speech and freedom of association. They then raise an equal protection argument suggesting that the Act is irrational.

The Act, however, has nothing to do with speech or protected association; and everything to do with elimination of illegal and unfair collusive activity. The Act's

[1] The Act was not new; it simply clarified the long-standing prohibition on "chain store organizations" by Class A license holders. It did so by providing express criteria defining a chain store organization and expressly outlawing "all franchise agreements involving the sale of alcoholic beverages." R.I. Gen. Laws § 3-5-11.1(b).

prohibitions are rational, reasonable, and deemed necessary by the legislature to ensure a level playing field for all Class A[2] retail liquor license holders in Rhode Island.

For several years, Plaintiffs have refused to play by the legal rules applicable to everyone else, and in so doing have gained an illegitimate competitive advantage over independent Rhode Island liquor retailers.[3] Plaintiffs attempt to hide their illicit actions under the mantra of benign "business advice." The indisputable truth, however, is that the operative franchise offering circular and agreement do much more and Plaintiffs coordinate (among other things) wholesale buying and price advertising for eleven[4] or more Class A liquor retail stores in Rhode Island, and have continued to expand, even after passage of the Act.[5] No other Class A retailers engage in this anti-competitive practice. Elimination of this (and other) collusive behavior is at the heart of the chain store/franchise prohibitions contained in the amended R.I. Gen. Laws § 3-5-11 and § 3-5-11.1.[6]

---

[2] A "Class A" liquor license "authorizes the holder to keep for sale and sell, at the place described, [alcoholic] beverages at retail . . . " R.I. Gen. Laws § 3-7-1, 3-7-3. All Rhode Island liquor retailers are required to obtain a Class A license to do business. There are over 250 Class A license holders in Rhode Island.

[3] Defendant UILR has contended for well over a year that Plaintiffs' activities have created an illegal "chain store organization" under existing law, pre-amendment.

[4] Plaintiffs represent that they presently have eleven franchisees. Seven are named Douglas Wine & Spirits, four are called People's Warehouse. Pl. Memo at 2. Plaintiff John Haronian is President and sole owner of Plaintiff Wine & Spirits Retailers, Inc.

[5] Even *after* passage of the Act, Plaintiffs have continued to add chain store organizations to their franchise. This month, another Douglas Wine & Spirits was added in North Providence and an application for a Pawtucket Douglas Wine & Spirits liquor license is pending for hearing on March 23.

[6] As shown below, Plaintiffs: 1) attack and cite only a very small portion of the Act's prohibitions on collusive activity in support of a preliminary injunction; and 2) omit from mention in their memo most all of their collusive, anti-competitive behavior with eleven Class A license holders and franchisees – actions which directly violate the portions of the Act they omit. More

The Twenty-first Amendment to the United States Constitution grants states broad power with respect to the regulation and distribution of alcohol. Indeed, prohibitions on chain store organizations have been upheld in many states, including Massachusetts and New Hampshire. As such, there is no substantial likelihood on the merits to justify injunctive relief. Nor is there irreparable harm to Plaintiffs, a balance of the equities or the public interest in their favor. The legislature gave Plaintiffs nearly nine months – from passage on July 3, 2004 until the April 1, 2005 effective date of the statute – to clean up their act or obtain a court ruling on the merits. While declining to do either, they now boldly demand that this Court reward them with the issuance an emergency injunction. Independent Rhode Island liquor store retailers are harmed each day that Plaintiffs continue their unfair competitive advantage. The legislature determined that the public interest is served by the Act's elimination of liquor retailer collusion and leveling of the playing field – and that this occur with certainty once and for all on April 1, 2005. Accordingly, Plaintiffs' demand for preliminary injunctive relief must be denied.

## I. ARGUMENT

In their motion, Plaintiffs ask this Court to declare unconstitutional R.I. Gen. Laws § 3-5-11 (pre and post amendment ) and § 3-5-11.1. They do so with scant citation to the wording of the statutes or the actions of Plaintiffs which violate those statutes. There is good reason for this oversight – the text of the statutes both on their face and as applied to

---

succinctly, Plaintiffs claim that they provide no service to their franchisees beyond that of a "paid advisor" and that the law unconstitutionally prohibits only the "business advice" they allegedly provide. Both are demonstrably false.

the actions of Plaintiff that they are designed to prohibit, violate neither the First Amendment nor the equal protection clause of the United States Constitution.

**A. The Applicable Legal Standards Present a High Hurdle**

It is black letter law that "[a] statute is presumed constitutional, and the 'burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it,' whether or not the basis has a foundation in the record. This Court is obligated to apply 'the elementary rule' that 'every reasonable construction must be resorted to in order to save a statute from unconstitutionality.' When faced with two possible constructions of a statute, one of which would raise 'serious constitutional problems' while the other would not, courts are required to construe the statute to avoid such problems." *Alliance of Automobile Mfg. v. Gwadosky*, 2005 U.S. Dist. LEXIS 1077 (D. Me. 2005) (quoting U.S. Supreme Court cases). Overlaying this high standard is the Twenty-first Amendment's broad grant of power to the states to regulate liquor distribution and sales within state borders. *See, e.g., Larkin v. Grendels Den*, 459 U.S. 121, 122 (U.S. 1982) ("Given the broad powers of the states under the Twenty-first Amendment, judicial deference . . . is especially appropriate in the area of liquor regulation.").

Plaintiffs nowhere specify whether they are challenging the subject statutes on their face or only as applied to their specific actions, an "as applied" challenge. "A facial challenge to a legislative act is the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The existence of a hypothetical or potential conflict is insufficient to warrant the

preemption of the state statute." *PHARMA v. Concannon*, 249 F.3d 66, 77 (1[st] Cir. 2001) (quoting U.S. Supreme Court cases).

An "as applied" constitutional challenge is "necessarily fact dependent," *Bowler v. State of Maine*, 23 Fed. Appx. 20 (1[st] Cir. 2001); that is, "dependent on the factual evidence provided as to how the statutory scheme has in fact operated vis-a-vis the plaintiffs." *McGuire v. Reilly*, 386 F.3d 45, 62 (1[st] Cir. 2004). Moreover, the "as applied challenge is then an attempt to 'specify' the law by freshly testing it in one particular fact situation while refusing to adjudicate the constitutionality of the law in other fact situations." *Id.* at 61.

To obtain injunctive relief, Plaintiffs must show a substantial likelihood of success that the subject statutes unconstitutionally affect their coordinated actions with respect to their eleven franchisees. They also must show irreparable harm absent the injunction, a balance of the relevant equities in their favor, and the effect of the court's action on the public interest. *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1[st] Cir. 2003).

**B. The Challenged Statutes Do Not Touch Protected Speech: They Outlaw Concerted Action**

Plaintiffs quote only a single subsection in one of the two statutes they claim is unconstitutional.[7] They cite R.I. Gen. Laws § 3-5-11(b)(1)(iv)'s prohibition on

---

[7] The amended R.I. Gen. Laws § 3-5-11(a), effective April 1, 2005, prevents Class A retail licenses from being "granted, issued, or transferred to or for the use of any 'chain store organization' . . . " Section (b) clarifies the term "chain store organization" (which was prohibited pre-amendment) to "include, but not limited to:

(1) Any group of one or more holders of Class A liquor licenses who engage in one or more of the following practices with respect to the business conducted under such licenses, either directly or indirectly, or have any direct or indirect beneficial

"coordinated or common planning or implementing of marketing strategies." Pl. Memo at 2, 13 (mistakenly referring to subsection (iv) as subsection (d)). Nowhere do they challenge the constitutionally on free speech or any other ground of § 3-5-11(b)(1)(i), (ii), (iii), (v) or (vi). If Plaintiffs are the mechanism by which a group of Class A license holders engage in *any* "one or more" of these prohibited, collusive actions, the license holder is part of an illegal "chain store organization" and subject to fine, a cease and desist order and ultimate license revocation under R.I. Gen. Laws § 3-5-11(b)(4). All six chain store organization indicia prohibit collusive and/or coordinated activities involving two or more

---

> interest in the following practices:
>
> (I) Common, group, centralized or coordinated purchases of wholesale merchandise.
>
> (ii) Common billing or utilization of the services of the same person or the same entity in the management or operation of more than one liquor licensed business.
>
> (iii) Participation in a coordinated or common advertisement with one or more liquor licensed business in any advertising media.
>
> (iv) Coordinated or common planning or implementation of marketing strategies.
>
> (v) Participation in agreed upon or common pricing of products.
>
> (vi) Any term or entity identified as a chain or common entity.

The statute goes on to provide other common corporate features that also would create an illegal "chain store organization" and to specify penalties. None of the penalties in this statute, however, apply to Plaintiffs. The penalties fine, suspend or revoke the license of the Class A license holder only. This raises the question of whether Plaintiffs, who hold no Class A license in Rhode Island, have sufficient standing to challenge the constitutionality of the old or amended R.I. Gen. Laws § 3-5-11. It is the position of Defendant UILR that Plaintiffs can raise neither a facial nor as applied constitutional challenge to this statute, under which they cannot be penalized. *See, e.g. Sola v. Sanchez Vilella*, 270 F. Supp. 459, 264 (D.P.R., 1967) *affd.* 1968 U.S. App. LEXIS (1st Cir. 1968) ("No one can obtain a decision as to the invalidity of a statute on the ground that it impairs the rights of others. To meet the test of interest requisite to give standing to challenge the constitutionality of legislation, one must show that he is directly affected by the legislation in question."). The Attorney General also raises the affirmative defense of Plaintiffs' standing.

Class A liquor retailers. The Rhode Island General Assembly was well within its power to find that any such collusion constituted an illegal chain store organization.[8]

A showing of no likelihood on the merits regarding any one of the statutory criteria creating a prohibited chain store organization is enough to scuttle Plaintiffs' motion for a preliminary injunction, since, as demonstrated below, Plaintiffs are the mechanism through which the very activity outlawed occurs. Nonetheless, Plaintiffs' protestations aside, even the one provision they do attack – "coordinated or common planning or implementing of marketing strategies" – presents no First Amendment difficulty.

The central premise of Plaintiffs' motion for injunctive relief is that this provision prohibits speech, either commercial or noncommercial, protected by the First Amendment.[9] Specifically, the provision, according to Plaintiffs, prohibits "paid marketing and management advice." Pl. Memo at 9-10. A fair reading of the provision at issue, however, shows it does no such thing. What R.I. Gen. Laws § 3-5-11(b)(1)(iv) does

---

[8] Plaintiffs also attack the former version of R.I. Gen. Laws § 3-5-11 (expiring March 31, 2004) on the ground that it "left entirely within the discretion of the Department of Business Regulations [sic] to determine what business relationships are permissible under the State's chain store rule." Pl. Memo at 14. The amended version, however, accomplishes exactly what Plaintiffs' allege was missing from the prior version; namely, clear and succinct prohibitions on what "business relationships are [im]permissible under the State's chain store rule." *Id.*

Defendant UILR is quite surprised at Plaintiffs' assertion of selective enforcement, since it was the lack of enforcement under the prior statute to halt the concerted activities *of Plaintiffs* that inured to their great benefit – and the great detriment of UILR members. In any event, while not enforced against Plaintiffs, the former statute was clearly constitutional. *See, e.g., Whitman v. American Trucking Assoc.*, 531 U.S. 457, 472 (2001) (statute authorizing regulation "in the public interest" set down sufficient "intelligible principle" to pass constitutional muster).

[9] Plaintiffs' central argument is that one subsection of the Act "prohibits a specific type of speech – paid marketing and management advice" and that the statute's prohibition of such advice violates the First Amendment. Pl. Memo at 10. There are two fundamental flaws in Plaintiffs' argument; first, the subsection does not prohibit the rendering of business advice; and second, what it does prohibit (and what Plaintiffs do not challenge in their motion) is precisely the type of collusive, anti-competitive activities in which Plaintiffs are engaged.

outlaw is *coordinated or common* implementation of marketing strategies. There is no prohibition whatsoever on Plaintiffs' provision of paid marketing and management advice to any Class A license holder it wishes. The prohibition is limited to the coordination of planning and marketing *between or among* two or more Class A license holders. The prohibition does not outlaw speech as Plaintiffs' claim; it outlaws concerted commercial activity.[10] This crucial distinction cuts the heart out of the First Amendment argument contained in Plaintiffs' memorandum. *See, e.g., Massachusetts Sch. of Law at Andover v. ABA*, 937 F. Supp. 435 (D. Pa. 1996) *aff'd* 107 F.3d 1026 (3d Cir. 1997) (merely stating "opinion" is speech protected by First Amendment; concerted unlawful "conduct," however, "is outside the First Amendment's reach"). Where, as here, the "opinion" or "advice" must be followed, thereby creating concerted action, there is no First Amendment protection from antitrust or illegally collusive activity. *National Soc'y of Professional Eng'r, Inc. v. United States*, 435 U.S. 679 (1978) (finding of antitrust violation not unconstitutional under First Amendment where position of trade association results in action by members to boycott companies that do not follow it).

Plaintiffs attempt to turn this case into a commercial speech case to fit it into the holding of *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996). *44 Liquormart*, however, supports the constitutionality of subsection (iv). That case involved a *total prohibition* on truthful commercial speech (price advertising by any individual Class A license holder) directed to the public at large. Here, the restriction about which Plaintiffs

---

[10] Plaintiffs also complain that: "It is . . .management and marketing advice that §§ 3-5-11 and 3-5-11.1 target. These statutes do not have an incidental effect on association for purposes of speech. Their purpose and effect is to eliminate marketing and management advice for fee in the liquor retail industry." For the same reason as above, the contention goes nowhere.

complain – even assuming it involves speech at all – is not a total ban on paid business advice. Indeed, *any* Class A license holder may obtain marketing or business advice from whomever it chooses.[11] If Plaintiffs were truly providing nothing more than paid advice that a Class A liquor license holder could and did accept or reject with impunity, then there would be no law violation.[12] Advice to Class A license holders is fine; collusion by two or more license holders is not. Put another way, it is not the alleged "speech" that forms the legal violation – it is the concerted action that results from the alleged "speech." Otherwise, there could be no enforceable anti-trust law, such as the Sherman Act and Clayton Act discussed in the Brief of the Attorney General, involving concerted action.

Consistent with this analysis is a provision in the Act providing that "[n]otwithstanding anything contained in this chapter to the contrary, this act shall not be construed as to prevent the utilization of duly licensed professionals rendering services as independent contractors." R.I. Gen. Laws § 3-5-11.1. In other words, it is clear that just like business advisors, attorneys, accountants and other licensed professionals can represent Class A license holders. What the Class A license holder cannot lawfully use them for, however, is to facilitate (or become the mechanism for) coordinated, common purchasing of wholesale commodities, advertising or marketing strategies or management or operation of more than one Class A licensed store.

---

[11] For the same reason, subsection "(iii) Participation in a coordinated or common advertisement with one or more liquor licensed businesses in any advertising media" easily passes constitutional muster as a legitimate restriction on concerted activity.

[12] There would also be nothing to enjoin.

Again, the restriction is a ban on *collusive, anti-competitive activity,* akin to antitrust restrictions elsewhere in law. It is not a restriction on protected speech, advice or opinion.

Plaintiffs spend much time arguing that the State's rationale in passing the Act was "promoting temperance." Pl. Memo at 3, 10, 11, 12. The General Assembly, however, provided an express purpose for the 2004 Act to "promote the effective and reasonable control and regulation of the Rhode Island alcoholic beverage industry and to help the consumer by protecting their choices and ensuring equitable pricing." R.I. Gen. Laws § 3-5-11.1. Without the Act in place, Plaintiffs were able to start a liquor retailer empire through clever lawyering designed to get around the former chain store prohibition. Without owning a single Class A license themselves, Plaintiffs are nonetheless able to control wholesale purchase price and retail advertised price of eleven Class A retailers to date.[13]

Had the General Assembly not stepped in, Plaintiffs could and would have continued to build their empire one store at a time with no limit; over time crushing the independent liquor retailer system in place in Rhode Island for decades. The legislature was entitled to find that allowing franchised chain store organizations would have eventually resulted in the consolidation of the retail liquor industry, eliminating healthy competition and restricting the availability of products for the consumer.

[13] Defendant UILR has strong reason to believe that the connections between Plaintiffs and their franchisees go well beyond collusive wholesale purchasing and price advertising, and includes actual control over each franchisee's business. Specific allegations in this respect will await discovery.

Courts throughout the country have held that state laws prohibiting or limiting chain store organizations, and their anti-competitive effects to the retail liquor industry, survive constitutional challenge. Plaintiffs cite no case to the contrary. For example, in *Granite State Grocers Assoc. v. State Liquor Comm'n,* 289 A.2d 399 (N.H. 1972), the New Hampshire Supreme Court upheld a ban on more than two retail liquor licenses, noting that the "obvious purpose of this well rounded regulatory system is to supervise and fractionalize the beverage industry" and that "at least twenty states similarly restrict the number of alcoholic beverage permits." *Id.* at 65. The Court also noted that "[r]egulations against concentration in the alcoholic beverage business necessarily discriminate against chain stores . . . [d]iscrimination based on size is not unconstitutional as long as it serves a bona fide public purpose." *Id.* at 66.

Likewise, in *Johnson v. Martignetti*, 375 N.E.2d 290 (Mass. 1978) the Massachusetts SJC upheld a limit of three retail stores, stating, in language equally applicable to the Act that:

> Concentration of retailing in the hands of an economically powerful few has been thought to intensify the dangers of liquor sales stimulations, thereby threatening trade stability and promotion of temperance. Regulation of the number of licenses issued, therefore, aims at controlling the tendency toward concentration of power in the liquor industry; preventing monopolies; avoiding practices such as indiscriminate price cutting and excessive advertising; and *preserving the right of the small, independent liquor dealers to do business.*

*Id.* at 297 (emphasis added); *see also Reinfield v. Schieffelin & Co.*, 466 A.2d 563, 568 (N.J. 1983) ("liquor dealers are not a suspect class, nor is liquor distribution a fundamental right . . . [t]here is no . . . constitutional right to engage in the business of selling liquor").

As in other states, the Rhode Island Act is a constitutional exercise of the legislature's power to regulate the retail distribution of alcoholic beverages not only to

promote temperance, but to preserve competition, protect consumer choice, ensure equitable pricing and allow all Class A liquor retailers to compete on a level playing field.

**C. Plaintiffs' Collusive Actions Constitute Much More Than "Business Advice"**

Just as bad as their failure to cite the operative statutory provisions, Plaintiffs also fail to attach or even cite to relevant provisions of their operative March 30, 2004 Franchise Offering Circular ("FOC") or the April 1, 2004 Franchise Agreement ("FA") – agreements that they claim do nothing more than provide "business advice" for a fee. Most importantly, Plaintiffs fail to disclose the undeniable fact that they *coordinate wholesale purchases of alcohol for all eleven franchisees and jointly advertise the price of alcoholic beverages for the group.*

The Attorney General attaches as Exhibit 1 to his memo opposing a preliminary injunction the affidavit of Maria L. D'Alessandro, Associate Director & Superintendent of Securities in the Rhode Island Department of Business Regulation, the division which receives franchise agreements for the State. Plaintiffs omit attachment of or citation from their FOC or FA in their Memo with good reason – even a cursory review shows Plaintiffs provide much more than "paid marketing and management *advice*" (emphasis added) and that franchisees have an obligation to Plaintiffs far beyond acceptance or rejection of mere business "advice."

Advice is "a recommendation regarding a decision or course of conduct." *Merriam-Webster Dictionary.* Real advice can be accepted or rejected with impunity. The core of Plaintiffs' FOC and FA is not advice to individual Class A license holders; it is mandates,

restrictions and requirements binding each and every franchisee collectively under severe penalty.

The FOC explains that each franchisee pays an up front $10,000 fee as well as a monthly royalty fee based on gross receipts, a monthly advertising and promotion fee; a transfer fee, a renewal fee, an audit fee and costs of training. FOC Item 6. In addition, Item 8 of the FOC provides that:

> We will provide you with a list of approved and required inventory items, a list of approved vendors, a plan-a-gram of all departments , a store layout, sample reports and an operations manual as part of your franchise package. We have the sole right to approve suppliers of product to your business. We may require you to discontinue the use or sale of any product or item, which does not meet the standards of quality established by us.

As the Attorney General shows, the FOC and FA contain numerous other binding mandates, restrictions and requirements, including but not limited to – selling only products and services "previously approved in writing," "computer equipment and point of sale software" requirements, inability of franchisee to terminate franchise, prior approval required for relocation, mandatory specifications regarding "fixtures and design, signs; displays and other promotional material; hours of operation; related items bearing our trademarks, service marks, names and slogans . . . modified at our sole discretion," and franchisor's right to inspect records and store "without providing any prior notice to Franchisee."

In sum, Plaintiffs' contention that "as set forth in the franchise agreement, the Franchisor's role is limited, to one of paid advisor," Pl. Memo at 1, is directly contradicted by the clear terms of the FOC and FA. The coordinated actions of the franchisees described in the FOC are clear violations of R.I. Gen. Laws § 3-5-11(b)(1)(ii) ("common

billing or utilization of the services of the same person or the same entity in the management of or operation of more than one liquor licensed business) and R.I. Gen. Laws § 3-5-11(b)(1)(iv) ("coordinated or common planning or implementation of marketing strategies").

Equally important is what is *not* in the FOC or FA concerning Plaintiffs' collusion with eleven Class A licensees. In direct violation of R.I. Gen. Laws § 3-5-11(b)(1)(i) (coordinated or common advertisement) and (iii) (participation in agreed upon or common pricing of products), Plaintiffs facilitate coordinated advertisements among its franchisee Class A license holders. As did the Attorney General, Defendant UILR attaches hereto as *Exhibit A*, a copy of the latest coordinated price advertisement of seven different Douglas Wine & Spirits liquor stores advertising a single price for a variety of alcoholic beverages.

Furthermore, Plaintiffs through counsel indicated to the Department of Business Regulation in response to a request for comments on proposed chain store regulations that "In joint advertisements, licensees frequently advertise that the same prices are available at either location. . . . Where more than one location is advertising the same prices in the same advertisement *it can be assumed that they received the same price from the wholesaler*. Even without a franchise relationship, licensees are free to negotiate together. Any exclusion of franchisees from this practice, but not other licensees, would be in violation the franchisee's equal protection rights." Letter from Plaintiff's Attorney to Jeffrey Greer, Dated December 9, 2003.[14] (Emphasis added; attached to Attorney

[14] Whether or not licensees were free to negotiate together prior to the amended Act, it is clear they are not so permitted after April 1st. It is also clear that the prohibition applies to franchisees and nonfranchisees alike.

General's Memo). Plaintiffs thus concede that advertisement of identical prices in the same ad by numerous liquor stores means that each store received the same price.

It is also clear that receipt of the same price from the wholesalers on all product by Class A liquor stores regardless of size is not by accident – Plaintiffs coordinate such purchases for and among the group to get a lower wholesale price than Class A licensees who compete, rather than collude, in wholesale price negotiations.[15] Attached as *Exhibit B* hereto is a copy of the www.douglaswin.com/locations.asp webpage. Seven franchised locations are shown. On the lower right, Douglas Wine & Spirits concedes that "[a]ll items are purchased though Douglas Wine & Spirits, 1661 Mineral Spring Avenue, North Providence."[16] It is thus clear that at least seven Class A license holders utilize Plaintiffs for "common, group, centralized or coordinated purchases of wholesale merchandise." In sum, to say that the collusive, anti-competitive activities shown here amount to nothing more than "marketing and business advice" to franchisees is akin to saying that the rulings of this Court are nothing more than legal advice to the parties.

---

[15] Evidence from delivery receipts clearly establishes that individual franchisees have received the top deal prices from wholesalers for ordering the maximum quantity of a certain product although only one or two cases have actually been delivered to a store. In practice, franchisees have apparently received the maximum quantity discount regardless of the actual quantity purchased by each individual retailer. This occurs because all alcohol for all franchisees is purchased through the franchisor in high volume, quantities that are of course unattainable by each individual independent liquor retailer. This unfair advantage is precisely the behavior that the Act is designed to prevent.

[16] Plaintiffs' contention that "[t]he Franchisor does not . . . participate in the actual . . . purchasing of alcohol for these stores," Pl. Memo. at 1, is certainly belied by its webpage admission. Defendant UILR's understanding (pending further discovery) is that Plaintiffs negotiate the best price on behalf of its franchisees using its superior combined market, thereby enabling each franchisee to obtain preferred identical lower group cost per item regardless of its own independent buying power and regardless of the level of alcohol purchased from wholesalers.

Under the chain store organization statute, a finding that any "one or more" of the enumerated practices exist automatically results in a prohibited "chain store organization," subjecting a Class A license holder engaging in these activities to a fine, license suspension or revocation a cease and desist order and even dissolution of the violating chain store entity.[17] R.I. Gen. Laws § 3-5-11(b)(4). In their motion for preliminary injunctive relief, Plaintiffs challenge the constitutionality of only *one* of the four provisions they are violating. Because they coordinate the violation of at least three other provisions, the constitutionality of which are not contested,[18] Plaintiffs have no likelihood of success on the merits requiring an injunction on the applicability of the Act.[19]

## D. Plaintiffs Cannot Show Irreparable Harm

Plaintiffs claim that the Act causes a "violation[] of a fundamental constitutional right[]" which "always constitute[s] irreparable harm." Pl. Memo at 19. Plaintiffs opine that the alleged constitutional injury it suffers is "as a matter of law, irreparable" and that

[17] As pointed out above, since none of these sanctions apply to Plaintiffs (as opposed to the Class A license holders), it is difficult to see how they have standing to challenge R.I. Gen. Laws § 3-5-11.

[18] To be clear, Plaintiffs steadfastly refute above the notion that even the challenged subsection violates the First Amendment and that any of the other three subsections, even if challenged, somehow violate any constitutional provision.

[19] Plaintiffs' equal protection challenge to the Act is just as easily dismissed. Plaintiffs complain that the Act's anti-collusion provisions for all Class A liquor retailers are not applicable to wholesalers and food chains that also sell alcohol. So what? Since liquor retailers are not a suspect class under the Constitution, the State need only have a rational basis for outlawing retail liquor chain store operations and collusive franchise agreements involving Class A licensees. While Plaintiffs cite no case finding an equal protection violation in such laws, many courts throughout the country have ruled that there is no equal protection issue. *See, e.g., Johnson v. Martignetti*, 375 N.E.2d 290 (Mass. 1978); *Granite State Grocers Assoc. v. State Liquor Comm'n*,289 A.2d 399(N.H. 1972). The more than rationale basis of the legislature in passing the Act is discussed above.

the voiding of Plaintiffs' franchise agreements on April 1 "will cause obvious irreparable harm" to them. *Id.*

First, Plaintiffs activities both inside and outside the FOA and FA violate numerous sections of the Act, the constitutionality which are not challenged here. As such, even assuming a First Amendment issue exists (which it does not), Plaintiffs are still facilitating illegal Class A retailer collusion, which precludes any finding of cognizable harm. Moreover, the voiding of the franchise agreements pursuant to law is in no way irreparable. If Plaintiffs somehow prevail on the merits of their case, they simply restore the franchisees.

Also noteworthy is the fact that not a single Class A license holder is a plaintiff in this case. Each license holder paid a $10,000 up front fee to become a franchisee, and a six figure additional investment beyond that. Moreover, Class A license holders, not Plaintiffs, are the ones who are sanctioned by the illegal collusion. The entities most affected by the implementation of Act are not even parties, not seeking an injunction and not claiming irreparable harm. Plaintiffs much weaker claim of irreparable harm is properly rejected.

## E. The Equities Favor the Independent Liquor Retailers

The independent liquor retailers are the ones truly harmed by a failure of the Act to go into effect on April 1, as deemed by the legislature, and unlike the franchisees, they are parties to this litigation. The independents compete, not collude, with each other with respect to wholesale buying and price advertising. The independents are harmed by chain store organizations and franchisees who join forces to tilt the playing field in their favor.

Moreover, the Act at issue in this case became law on July 3, 2004, nearly *nine months* before its effective date of April 1, 2005. Plaintiffs had ample time to file suit and move for summary judgment to resolve this case on its merits long before today. Instead, Plaintiffs did not file suit until September 29, 2004 and did not move for a preliminary injunction until January 24, 2005. Their delay should not be rewarded by short-circuiting a statute set to go into effect on April 1. The General Assembly gave Plaintiffs nine months to move their challenge to resolution on the merits or end their unlawful collusion. Instead, Plaintiffs have pursued the slow track on the constitutional challenge while using that time to expand their illegal empire. The equities strongly oppose Plaintiffs' demand that the effective date of the Act be halted for any additional time beyond that deemed appropriate by the legislature.

### F. The Public Interest is Served by Allowing the Act to Take Effect

The General Assembly has deemed it the policy of the State to ensure that all Class A liquor retailers compete on a level playing field. Chain store organizations and franchises involving liquor stores violate State policy. The legislature, while usually making its laws effective upon passage, here gave all Class A license holders acting inconsistent with this policy nine months to clean up their act. The public interest is now served by allowing the Act to take effect as scheduled.

## II. CONCLUSION

For the foregoing reasons, Defendant UILR requests that Plaintiffs' motion for a preliminary injunction be denied.

Respectfully submitted,

UNITED INDEPENDENT LIQUOR
RETAILERS OF RHODE ISLAND

By its attorney,

Joseph S. Larisa, Jr., Esq. #4113
Larisa Law and Consulting, LLC
One Citizens Plaza, Suite 1100
Providence, RI 02903
(401) 743-4700
(401) 633-7296 (fax)

DATED: March 14, 2005

## CERTIFICATION

I hereby certify that I sent by first class mail postage prepaid and email in pdf format a true copy of the attached Memorandum in Support of Objection on this 14th day of March 2005 to the following:

Rebecca Tedford Partington #3890
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Robert J. Roughsedge, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736

**DOUGLAS WINE & SPIRITS**
ALL STORES INDEPENDENTLY OWNED & OPERATED

**OPEN SUNDAYS 12-6 PM**

1661 Mineral Spring Ave., N. Prov.
1450 Smith St., N. Prov.
1235 Wampanoag Tr., E. Prov.
900 Victory Highway, N. Smithfield
453 Atwood Ave., Cranston
39 Putnam Pike, Johnston
1380 Hartford Ave., Johnston
WWW.DOUGLASWINE.COM

2/$3.00 POLAND SPRING 6 Pk

3/$1.98 POLAR MIXERS All Types 1L

# BEER

- $18.99 COORS Orig or Light, 30 Pk Cans
- $15.99 LABATT 2/12 Pk Btl Case
- $20.99 HARPOON 2/12 Pk Btl Case
- $15.99 ROLLING ROCK 2/12 Pk Btl Case
- $11.99 SMIRNOFF ICE Reg or Triple Black, 12 Pk Btls
- $11.99 BASS ALE
- $23.99 SMITHWICK'S
- $11.99 GUINNESS
- $17.99 KILLIAN'S
- SAM SMITH 18.7 oz Btl ........ 2/$ 7.00
- BAVARIA 2/12 Pk Btl Case ........ $ 17.99
- ST PAULI NON-ALC 4/6 Pk Btl Case ........ $ 17.99
- $10.29 GENESEE 30 Pk Cans
- $13.99 KEYSTONE Ice or Light, 30 Pk Cans
- $15.99 MOLSON Exc. XXX, 2/12 Pk Btl Case
- $21.99 MAGIC HAT 2/12 Pk Btl Case
- $21.99 SAM ADAMS 2/12 Pk Btl Case

# MARCH MAGNUM MADNESS

- $10.99 WOODBRIDGE All Types 1.5L
- $7.99 SAKONNET Eye of the Storm & All Other Types 1.5L
- 2/$19.00 LITTLE PENGUIN All Types 1.5L
- 2/$17.00 CLOS DU BOIS Chard-Shiraz-S Blanc 750ml
- 2/$15.00 SMOKING LOON All Types 750ml
- 2/$6.00 SUTTER HOME White Zinfandel 750ml
- $7.99-1.00 Mail-In Rebate $6.99 MEZZA CORONA Pinot Grigio 1.5L
- $6.99 VENDANGE All Types 1.5L
- $5.99 STONY HOLLOW All Types 1.5L
- TRINCHERO 750ml All Types *Manager's Selection* ...... 2/$ 16.00
- LINDEMANS RESERVE All Types 750ml ........ 2/$ 16.00
- VILLA PUCCINI 750ml Red or Pinot Grigio ........ 2/$ 15.00
- JACOB'S CREEK 750ml All Types ........ 2/$ 15.00

# SPIRITS

- $31.99 KETEL ONE VODKA 1.75L
- $30.99 JOHNNIE WALKER RED 1.75L
- $18.99 SEAGRAM'S VO 1.75L
- SMIRNOFF 80 Proof or BACARDI Light or Dark 1.75L $18.99
- KAHLUA 1.75L ........ $ 29.99
- SAUZA GOLD 1.75L *Manager's Selection* ........ $ 26.99
- EVAN WILLIAMS 1.75L ........ $ 17.99
- CLUNY SCOTCH 1.75L ........ $ 12.99
- $24.99 BEEFEATER GIN 1.75L
- $28.99 STOLI VODKA 1.75L
- $15.99 JACQUIN'S Coffee-Ginger Blackberry-Apricot Brandy 1.75L

PRICES EFFECTIVE 3/6/05-3/12/05

B

LOCATIO

HOME LOCATIONS EMPLOYMENT EVENTS E-MAIL SIGN-UP CONT

shopping cart

- .Specials
- .Wine Cellar
- .Beer Cooler
- .Spirits Center
- .Shop Baskets
- .Home Bar

**North Providence**
1450 Smith Street,
401.353.0576

1633 Mineral Spring Av.
401.353.6400

**No. Smithfield**
900 Victory Highway
401.769.5545

**East Providence**
1235 Wampanoag Trail
401.433.0231

**Johnston**
1308 Hartford Ave
401.751.4222

39 Putnam Pike
401.232.7700



**Cranston**
453 Atwood Ave.
401.944.6900

**Other Locations:**

**Fairhaven, MA**
One Peoples Way
508-997-0311

**New Bedford, MA**
446 Dartmouth Street
508-992-3387

© 2004 Douglas Wine &
privacy notice retur

All stores are independently owned and operated
All items are purchased through Douglas Wine & Spirits
1661 Mineral Spring Avenue, North Providence.

developed by eedrap Design and Focus Business S