UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC., *et al.*
*Plaintiffs,*

*v.*

STATE OF RHODE ISLAND, *et al.*,
*Defendants.*

Civil Action No. 04-418-T

**MOTION of the PLAINTIFF STOREOWNERS**
**for a PRELIMINARY INJUNCTION**

The plaintiff storeowners move pursuant to Fed.R.Civ.P. 65 for a preliminary injunction to preserve the status quo pending a resolution of the substantial constitutional issues raised in this matter. For the reasons stated in the *Memorandum In Support of the Motion of the Plaintiff Storeowners for a Preliminary Injunction,* the Court should enjoin enforcement of R.I. Gen. Laws §§3-5-11(b)(1)(iii) (prohibiting "[p]articipation in a coordinated or common advertisement with one or more liquor licensed business in any advertising media") and (b)(1)(vi) (prohibiting "[a]ny term or name identified as a chain or common entity") pending a final decision on the merits.

**REQUEST FOR ORAL ARGUMENT**
**& EVIDENTIARY HEARING**

It is believed that an evidentiary hearing and oral argument will assist the Court in its consideration of this motion. An evidentiary hearing and oral argument is respectfully requested.

Dated: October 12, 2005

Respectfully submitted,
WINE & SPIRITS RETAILERS, INC., *et al.*

By their Attorneys,

Robert J. Roughsedge (#5876)
Evan T. Lawson (*pro hac vice*)
Michael Williams (*pro hac vice*)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC., *et al.*
*Plaintiffs,*

*v.*

STATE OF RHODE ISLAND, *et al.*,
*Defendants.*

Civil Action No. 04-418-T

**MEMORANDUM IN SUPPORT of the MOTION of the PLAINTIFF STOREOWNERS for a PRELIMINARY INJUNCTION**

The storeowner plaintiffs seek to enjoin the enforcement of §3-5-11's restrictions on joint advertising and name use. Section 3-5-11(b)(1)(iii) prohibits "[p]articipation in a coordinated or common advertisement with one or more liquor licensed business in any advertising media." Section 3-5-11(b)(1)(vi) prohibits "[a]ny term or name identified as a chain or common entity."

On August 10, 2005, the Court of Appeals for the First Circuit held, "[w]e agree with W & S's underlying premise that commercial speech, including truthful liquor advertising, is entitled to a measure of protection under the First Amendment." *Wine & Spirits v. Rhode Island*, No. 05-1549 (1st Cir., August 10, 2005) Slip Op. at 18, *citing*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501, 516 (1996); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976). The First Circuit suggested that these protections afforded to commercial speech lie with the franchisee storeowners, rather than with Wine & Spirits Retailers (W&S). Slip Op. at 20. This Court now has before it three such franchisees whose ability to engage in truthful advertising is being limited by §3-5-11. Section 3-5-11 also limits their ability to speak to their prospective customers through their chosen brand identity.

## I. Facts

CWS Operating Co., Inc. d/b/a Douglas Wine & Spirits – Cumberland (DW&S – Cumberland), Douglas Liquor Inc. d/b/a Douglas Wine & Spirits – N. Providence (DW&S – N.Providence), and MAB Liquors, Ltd d/b/a Douglas Wine & Spirits – Cranston, (DW&S – Cranston) each hold Class A liquor licenses. Each was a franchisee of Wine & Spirits Retailers prior to the effective date of §§3-5-11, as amended, and 3-5-11.1. The plaintiff storeowners have invested considerable resources into establishing consumer goodwill in the name Douglas Wine & Spirits. This investment is jeopardized by the enforcement of §3-5-11(b)(1)(vi).

The plaintiff storeowners have historically engaged in joint advertising and seek to do so again in the future. They are currently precluded from doing so by §3-5-11(b)(1)(iii).

## II. Argument

### A. Standard For A Preliminary Injunction

The standard for issuing a preliminary injunction is, "whether the plaintiff is likely to succeed on the merits, whether the plaintiff will otherwise suffer irreparable harm, whether the benefits of an injunction will on balance outweigh the burdens, and whether an injunction is consistent with the 'public interest.'" *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corporation*, 990 F.2d 25, 26 (1st Cir. 1993). *See also, Gately v. Comm. of Mass.*, 2 F.3d 1221, 1224 (1st Cir. 1993), *cert. denied*, 511 U.S. 1082 (1994).

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir.1995). *See also, Ashcroft v. A.C.L.U.*, 542 U.S.__, 124 S.Ct. 2783, 2791, 159 L.Ed.2d. 690 (2004) (sustaining the granting of a preliminary injunction issued against the enforcement of a statute, where the defendant failed to show that the restriction on speech did not

encompassed more speech than was necessary to achieve the offered governmental interest). Unless the Court grants preliminary injunctive relief, the plaintiff storeowners will be forced to change their names and marketing strategy and will be prevented from associating together for the purpose of speaking to their prospective customers. The name recognition and good will associated with the name Douglas Wine & Spirits will be lost. No relief granted by this Court at the end of this litigation will fully restore the Plaintiffs to their current circumstances.

**B. Likelihood of Success**

**1. The Plaintiffs have a Strong Likelihood of Success on Their First Amendment Claims**

a. Name Use

Section 3-5-11(b)(1)(vi) prohibits "[a]ny term or name identified as a chain or common entity." Each of the plaintiff storeowners uses the name Douglas Wine & Spirits to identify themselves to their customers. This brand name conveys a message to potential customers in the same way that the name McDonald's on the outside of a restaurant speaks volumes to potential customers about what they will find inside. Just as a picture can be worth a thousand words, a familiar brand name can communicate more than could be explained in a thousand words.

> "We built up a brand in the Douglas name. Douglas Wine & Spirits is a well-known name in Rhode Island. And what it does mean to the customer is that they're going to have the consistency no matter what store they go into in finding the product that they're looking for, well-lit, clean, well-merchandised store and knowledgeable employees. That's what you sell when you're selling a name, a brand. And as a franchisor, we want to make sure that it's kept the same way. It's like going to a McDonald's, you know what you're going to get when you go into a McDonald's. So that's the main reason why we all use the same name, it's a brandage of selling." A. 66-67 (*March 16, 2005 Hearing Transcript*, 20:19-21:7).

Rhode Island's ban on name use must be analyzed under the same standard as any other content-based restriction on signage. The State can impose reasonable restrictions on the size of signs. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (reasonable "time, place, or manner" restrictions, but only if they are "justified without reference to the content of the regulated

speech"). But, restrictions that consider the content of the sign are subject to heightened scrutiny. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 501-08 (1996) (finding unconstitutional a Rhode Island ban on including liquor prices on signs and in advertising). Even in the case of restrictions on the size of the sign, when those restrictions based on the message conveyed by the sign, they must be reviewed as a content-based restriction on speech. *Lorillard Tobacco Co. v. Reilly/Altadis U.S.A. Inc. v. Reilly*, 533 U.S. 525, 573-74 (2001) (invalidating height restrictions applicable only to tobacco signs because they singled out a specific message – those concerning tobacco products – for different treatment). This is not to say that government may never regulate the content of signs placed on a business – only that when government chooses to regulate content, it must justify that restriction on protected speech. The prohibition of using the names Douglas Wine & Spirits is a restriction of content, not a generally applicable time, place and manner restriction addressing such issues as size or placement of signs.

The Supreme Court has not addressed the scope of First Amendment protection of trade names post *Central Hudson.* The Second Circuit has considered whether signs and logos are pure speech or commercial speech in light of *Central Hudson* and *44 Liquormart.* In *Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 134 F.3d 87 (2nd Cir. 1998), the brewery used a label sufficiently provocative to attract the attention of the regulators. "A picture of a frog with the second of its four unwebbed 'fingers' extended in a manner evocative of a well known human gesture of insult has presented this Court with significant issues concerning First Amendment protections for commercial speech." *Bad Frog*, 134 F.3d at 90. The Second Circuit concluded that the label was protected as commercial speech. "[The label] serves to propose a commercial transaction. Though the label communicates no information beyond the source of the

product, we think that minimal information, conveyed in the context of a proposal of a commercial transaction, suffices to invoke the protections for commercial speech, articulated in *Central Hudson*." *Bad Frog*, 134 F.3d at 96-97. The trade names used by the storeowners do not inform the potential consumer of the source of the products sold. Instead, the name on the store conveys to the potential consumer more information than the *Bad Frog* label. The trade name conveys the reputation for quality, price and service associated with the name Douglas Wine & Spirits. *March 16, 2005 Hearing Transcript*, 20:19-21:7. Like a product label, the established reputation conveyed by the trade name invites the consumer to enter and do business, making it commercial speech. *Bad Frog*, 134 F.3d at 97.

Having concluded that logos and signs are commercial speech and that the regulation must be reviewed under the *Central Hudson* test, the Second Circuit held that although the state contended "that the frog appeals to youngsters and promotes underage drinking," "[t]he truth of these propositions is not so self-evident as to relieve the state of the burden of marshaling some empirical evidence to support its assumptions." *Bad Frog*, 134 F.3d at 100. Thus, Rhode Island may only restrict the use of the Douglas Wine & Spirits name if it can produce sufficient evidence to satisfy the *Central Hudson* test discussed below.

b. Joint advertising

There is no question that truthful advertising is protected by the First Amendment. *Wine & Spirits*, Slip Op., at 18. The First Amendment preserves the right to associating together in order to engage in protected expression. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech"). "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or

cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.*, at 46-61.

In *United Transp. Union v. State Bar of Michigan*, 401 U.S. 576 (1971) the Supreme Court addressed a challenge to a railroad union policy under which the union maintained an approved list of attorneys, limited the fees those attorneys could charge and required the approved attorneys to pay union officials for their time spent in making the referrals by the Michigan Bar Association. The Court held that the union's associational right was paramount.

> "The common thread running through our decisions in *NAACP v. Button, Trainmen*, and *United Mine Workers* is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment. However, that right would be a hollow promise if courts could deny associations of workers or others the means of enabling their members to meet the costs of legal representation." *United Transp. Union*, 401 U.S. at 586.

The plaintiff storeowners seek to associate together so that they can effectively engage in their fundamental right to truthfully advertise. Section 3-5-11(b)(1)(iii) prohibits the plaintiff storeowners from associating in order to engage in commercial speech or to share ideas about effective marketing of their liquor stores. *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937) ("peaceable assembly for lawful discussion cannot be made a crime").

**2. The Commercial Speech Standard**

In 1980, the Court developed a balancing test for commercial speech. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n.*, 447 U.S. 557 (1980). Under *Central Hudson,* a government restriction on advertisements or other commercial speech is permissible only on a showing that (1) the advertising is misleading, (2) the government interest in regulation is substantial, (3) the regulation directly advances that interest, and (4) the regulation is not more extensive than necessary to serve the interest. *Central Hudson*, 447 U.S. at 566. The State has the burden of justifying its restriction on speech.

The State cannot meet its burden under the third and fourth prongs of the *Central Hudson* test.

> "The third step of *Central Hudson* concerns the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest. It requires that 'the speech restriction directly and materially advanc[e] the asserted governmental interest. 'This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.''" *Lorillard Tobacco Co. v. Reilly/Altadis U.S.A. Inc. v. Reilly,* 533 U.S. 525, 555 (2001), *quoting, Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 188 (1999).

Addressing a height restriction on tobacco advertising, the *Lorillard Tobacco* Court held that, "[a] regulation cannot be sustained if it 'provides only ineffective or remote support for the government's purpose . . . or if there is 'little chance' that the restriction will advance the State's goal." *Lorillard Tobacco*, 533 U.S. at 566, *quoting, Edenfield v. Fane*, 507 U.S. 761, 770 (1993) and *Greater New Orleans*, 527 U.S. at 193. The State simply cannot show that its restrictions on the names of liquor stores or on joint advertising advance its interest.

Equally problematic is the fourth prong of the *Central Hudson* test, which requires, "a reasonable fit between the means and ends of the regulatory scheme." *Lorillard Tobacco*, 533 U.S. at 561. In *Lorillard* the Court held that, "[t]he broad sweep of the regulations indicates that [Massachusetts] did not 'carefully calculate the costs and benefits associated with the burden on speech.'" *Lorillard Tobacco*, 533 U.S. at 561, *quoting, City of Cincinnati v. Discovery Network,* 507 U.S. 410, 417 (1993). At issue in *Lorillard Tobacco* were broad restrictions adopted by Massachusetts on advertising that were not based on any local analysis of the problem addressed by the regulation or the effect of the regulations on speech. Rhode Island will be unable to demonstrate that the name use and joint advertising restrictions are calculated to advance their purpose and that they only burden speech to the extent necessary to achieve that purpose. *Lorillard Tobacco*, 533 U.S. at 563 ("the range of communications restricted seems unduly

broad. For instance, it is not clear from the regulatory scheme why a ban on oral communications is necessary to further the State's interest").

### 3. The Plaintiffs have a Strong Likelihood of Success on Their Equal Protection Claim

When a statute restricts speech, the State must justify that restriction under the First Amendment, when the statute also discriminates as to whom the restriction applies, the State must also justify the restriction under the Equal Protection Clause. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 98 (1972). In *Mosley* the Supreme Court addressed a restriction on protesting near school buildings, which contained an exception for labor disputes. *Id.* at 92-93. Mosley, who had been protesting against race-based school assignments outside a Chicago high school for several months before the enactment of the restriction, challenged the restriction on both freedom of speech and equal protection grounds. *Id.* at 93-94. While the Seventh Circuit decided the case on First Amendment grounds, the Supreme Court, instead, found an Equal Protection violation. *Id.* 94-95 ("Because Chicago treats some picketing differently from others, we analyze this ordinance in terms of the Equal Protection Clause of the Fourteenth Amendment"). The Court found:

> "The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing on the subject of a school's labor--management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign. But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content . . . Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id.* at 95-6.

The restrictions on speech and expressive association, in the form of restrictions on the name by which the plaintiff storeowners can identify themselves and restrictions on the storeowners associating together to speak to their customers, apply only to retail liquor stores

and cannot withstand any but the most indulgent scrutiny. These restrictions do not apply to other industries. They do not even apply to other retailers of alcoholic beverages, like bars and restaurants. "[W]e have frequently condemned such discrimination among different users of the same medium for expression." *Mosley*, 408 U.S. at 97. Because §§3-5-11(b)(1)(iii) and (b)(1)(vi) limit the fundamental rights of free speech and expressive association, they are subject to the strict scrutiny standard. *Mosley*, 408 U.S. at 99 ("Because picketing plainly involves expressive conduct within the protection of the First Amendment, discriminations among pickets must be tailored to serve a substantial governmental interest" (internal citations omitted)).

### C. The Constitutional Injuries the Plaintiffs Will Suffered will be Irreparable

Violations of fundamental constitutional rights always constitute irreparable harm. *Dunn v. Blumstein*, 405 U.S. 330, 351 (1972). No constitutional injury is a minor injury. The constitutional injuries suffered by the plaintiff storeowners are, as a matter of law, irreparable. *See Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). The plaintiff storeowners face denial of their right to speak to their prospective costumers through their brand identity or through their truthful joint advertising. If the injunction is denied, they will be required to purchase and install new signs and risk

### D. The Harm to the Plaintiffs Outweighs Any Conceivable Harm to the State by Delaying Enforcement of the Amendments

In contrast, the State will suffer no irreparable effects if the enforcement of these two provisions of §3-5-11 is delayed. Rhode Island has had liquor franchises since 1991. Dozens of liquor stores currently operate under similar or identical names without causing any problems for the orderly enforcement of liquor laws within Rhode Island. There are currently five Christy's Liquors, four Haxton's, two Murphy's Liquors and numerous other liquor stores that use the

same or similar names.

Additionally, where plaintiffs have demonstrated such a strong likelihood of success, the court should give less weight to any harm defendants might claim. "[W]here the likelihood of plaintiff's success on the merits is great, 'the less weight is to be given to the defendant's loss.'" *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 927 F.Supp. 528, 535 (D.Mass. 1996), *quoting*, *FDIC v. Elio*, 39 F.3d 1239, 1248 (1st Cir. 1994).

**E. Consistent with the Public Interest**

The public interest is "ill-served by the continued existence of unconstitutional ordinances, nor is it served by failure to enjoin defendant's discriminatory conduct." *Rubin v. City of Berwyn*, 553 F.Supp. 476, 481 (N.D. Ill 1982) (holding potential First Amendment violations should be enjoined pending litigation). The vindication of constitutional rights is always in the public interest. *See Cohen v. Brown University*, 809 F.Supp. 978, 1001 (D. R.I. 1992), *aff'd* 991 F.2d 888 (1st Cir. 1993).

## CONCLUSION

A finding that the plaintiffs' constitutional rights have probably been violated "necessarily entails a decision as to the other preliminary injunction criteria." *Planned Parenthood v. Bellotti*, 641 F.2d 1006, 1022 (1st Cir. 1981).

Respectfully submitted,
WINE & SPIRITS RETAILERS, INC., *et al.*
By their Attorneys,

Robert J. Roughsedge (#5876)
Evan T. Lawson (*pro hac vice*)
Michael Williams (*pro hac vice*)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

Dated: October 12, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC., *et al.*
*Plaintiffs,*

*v.*

STATE OF RHODE ISLAND, *et al.*,
*Defendants.*

Civil Action No. 04-418-T

**CERTIFICATE OF SERVICE**

The undersigned attorney for the Plaintiffs hereby certifies that true copies of the *Motion of the Plaintiff Storeowners for a Preliminary Injunction*, *Memorandum In Support of the Motion of the Plaintiff Storeowners for a Preliminary Injunction* and *Proposed Order* were served upon the following attorneys of record by United States first class mail, postage prepaid on this 12 day of October, 2005:

Rebecca Partington
Deputy Chief – Civil Division
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Joseph S. Larisa, Jr.
Larisa Law and Consulting, LLC
One Citizens Plaza, Suite 1100
Providence, RI 02903

Robert J. Roughsedge #5876