UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC.
and JOHN HARONIAN,
Plaintiffs,

v. C.A. NO. 04-418T

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS, and
JEFFREY J. GREER, in his capacity as
the Associate Director of the Department
of Business Regulation,
Defendants,

**OBJECTION TO MOTION OF PLAINTIFF STOREOWNERS FOR A PRELIMINARY INJUNCTION**

Now come Defendants State of Rhode Island and Jeffrey Greer and object to the Motion for Preliminary Injunction filed by "the plaintiff storeowners" on or about October 12, 2005. A memorandum in support is attached.

Respectfully Submitted,

Defendants
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington #3890
Deputy Chief – Civil Division
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2303
Fax: (401) 222-2995

## CERTIFICATION

I, the undersigned, hereby certify that I mailed a true copy of the within postage pre-paid, first class mail, on this 18th day of November, 2005 to those indicated below:

Melissa DiFazio

Robert J. Roughsedge, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736

Joseph S. Larisa, Jr., Esq.
Larisa Law and Consulting, LLC
One Citizens Plaza
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC.
and JOHN HARONIAN,
Plaintiffs,

v. C.A. NO. 04-418T

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS, and
JEFFREY J. GREER, in his capacity as
the Associate Director of the Department
of Business Regulation,
Defendants,

**MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION OF PLAINTIFF STOREOWNERS FOR A PRELIMINARY INJUNCTION**

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

"The plaintiff storeowners" have moved this court for injunctive relief pursuant to Fed. R.Civ.P.65. The arguments they make, and the remedy they seek, are indistinguishable from those pressed before this Court by the original Plaintiffs.[1] The storeowners have requested injunctive relief from enforcement of the provisions of R.I. Gen. Laws §§ 3-5-11(b)(1)(iii), prohibiting participation in a coordinated or common advertisement with one or more liquor licensed business in any advertising media, and 3-5-11(b)(1)(vi), prohibiting any term or name identified as a chain or common entity. The storeowners have apparently failed to review the decision of this Court[2] and of the First Circuit Court of Appeals[3], both of which rejected injunctive relief to the original Plaintiffs. The motion should thus be denied simply because of

[1] These Defendants incorporate and adopt the arguments made in response to the original Plaintiffs' Motion for Preliminary Injunction into this Memorandum.
[2] Wine and Spirits Retailers, Inc. v. State of Rhode Island, 364 F.Supp. 2d 172 (D.R.I. 2005).
[3] Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005).

the law of the case doctrine. No more time or resources should be spent on these issues. Further, the arguments simply lack merit.

## II. ARGUMENT

### A. The Standard for Preliminary Injunctive Relief

In order to obtain the extraordinary remedy of injunctive relief, a movant must show a likelihood of success on the merits; irreparable harm if the injunction does not issue; irreparable harm that the opposing party is likely to suffer if the injunction does issue; and the effect that the issuance or failure to issue an injunction may have on the public interest. Wine & Spirits Retailers, Inc. v. State of Rhode Island, 364 F.Supp.2d at 175. The storeowners request that this Court preserve the *status quo*. Since the *status quo* for well over a year now is that the law may be enforced, these Defendants concur.

### B. The Storeowners Cannot Show a Likelihood of Success

#### 1. The Storeowners Have Failed to Show Constitutionally Protected Activity

The foundation of the instant Motion is the First Amendment. Without its application, the motion collapses. As the First Circuit pointed out: "It is the duty of the party seeking to engage in allegedly expressive conduct to demonstrate that the First Amendment applies to that conduct." 418 F.3d at 49. Both this Court and the First Circuit have made it clear that the State is not regulating activity or speech protected by the Constitution. Notwithstanding the clarity of the previous holdings in this case, the storeowners allege that the statutes are content-based prohibitions which violate the First Amendment. To the contrary, this Court specifically held that:

> Indeed, the prohibition against common advertising does not prevent even the licensees, themselves, from advertising. In this respect, the prohibition is distinguishable from the ban on the advertisement of liquor prices that was held unconstitutional in 44 Liquormart v. Rhode Island because here, **no restrictions have been placed on the right of individual Class A licensees to advertise or on the content of their advertisement.** What

> subsection (b)(1)(iii) prohibits is the *concerted activity* of placing *common* advertisements which the evidence shows requires agreement among licensees with respect to what products will be advertised and what price will be charged for those products. In this regard, the prohibition against common advertising has no greater impact on licensees' freedom of expression than 'an injunction against price fixing' may have on 'the freedom of businessmen to talk to one another about prices.'

Id. at 177 (citations omitted) (italics in original) (boldface emphasis supplied).

This Court continued, stating:

> Put another way, a statute that prohibits certain types of conduct does not run afoul of the First Amendment simply because words may be among the means used in furtherance of that conduct. ... **That is especially true when the conduct consists of what might be perceived as anti-competitive commercial practices.**

Id. (emphasis supplied).

The First Circuit was equally clear:

> Certainly, the mere fact that the joint activities that define the business relationship between the franchisor and its franchisees have some communicative component cannot, in and of itself, establish an entitlement to the prophylaxis of the First Amendment. Consequently, that conduct does not warrant overriding the State's historic right to regulate market forces in the retail liquor industry.

418 F.3d at 53.

Indeed, the storeowners, like the original Plaintiffs, refuse to acknowledge precedent teaching that the conduct they engage in (advertising, common names) is not protected by the First Amendment. "The First Amendment's core concern is with the free transmission of a message or idea from speaker to listener, not with the speaker's ability to turn a profit or with the listener's ability to act upon the communication." Id. at 48. In holding that the acts prohibited by the statute under attack were not deserving of First Amendment protection, the First Circuit wrote that "The commercial speech doctrine protects the communication of truthful information to potential customers about a proposed commercial transaction" and that "The provision of

advertising and licensing services is not speech that proposes a commercial transaction and therefore does not constitute commercial speech." Id. at 49.

The storeowners also insist that the statutes violate their rights under the First Amendment to associate with each other for various business purposes. That argument, too, lacks vitality in light of the previous decisions in this case. In dismissing the associative component of the original Plaintiffs' Complaint, this Court correctly distinguished those types of associations worthy of Constitutional protection:

> First, the kinds of association most clearly protected by the First Amendment are associations 'for the purpose of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion.' While the First Amendment also may protect the rights of businesses to associate for economic purposes, it does not confer any right to engage in particular kinds of concerted economic activity. Rather, the constitutional limitations on a state's power to regulate such activity derives from other provisions, such as the due process and equal protection clauses.

Id. at 178 (citation omitted).

Apparently anticipating the possibility that Class A licensees would look to its decision for guidance, this Court put it in simple and straightforward terms:

> Here, the ban on the franchise sale of liquor does not prevent W&S and/or **Class A licensees** from associating for the purpose of exchanging or expressing ideas or for any other purpose except engaging in concerted economic activity.

Id.

The First Circuit offered an extensive explanation of why the freedom of association claim was without merit, concluding that:

> Business entities have no First Amendment right to combine operations or coordinate market activities for the purpose of obtaining a greater market share for each participant. The fact that communication serves as the primary instrument of conducting business among separate enterprises does not alter this conclusion.

418 F.3d at 51.

The First Circuit then found that the activity targeted by the statute was not protected speech, but rather collusive, anticompetitive conduct, as argued by the Defendants throughout these proceedings. The interpretation urged by the storeowners, like the original Plaintiffs, "...would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society." 418 F.3d at 51 (citation omitted). The Circuit cited with approval Supreme Court opinions "explaining that while communication is an integral part of joint conduct, that fact cannot be used as a pretext for obtaining immunity from laws prohibiting anticompetitive commercial activities" and that "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Id. (citations omitted).

The holding of the First Circuit in this regard is binding precedent in considering the instant motion:

> In enacting section 3-5-11.1, Rhode Island exercised its police power, including its power under the Twenty-First Amendment, to regulate commercial transactions involving liquor and the organizational structure of the market in which such transactions take place. Seen in this light, the statute is tantamount to an antitrust law—a category of regulation that recognizes the authority of the State to adjust the distribution of market power among commercial entities so as to prevent conditions that are, in its reasonably held view, harmful to healthy competition and free trade.

Id.

The First Circuit correctly characterized the subject prohibitions as being akin to antitrust laws, which "regulate the ways in which market players may pool their capabilities to acquire market power," id., and stated "It is black letter law that 'the constitutionality of the antitrust laws is not open to debate.'" Id. at 51 (citation omitted). The First Circuit recognized that the state can "exercise control over the efforts of market players to exploit the principle of strength in numbers in the marketplace of goods" because "no First Amendment interest stands in the

way of a State's rational regulation of economic transactions by or within a commercial association". Id. at 52.

Since it is clear that these holdings apply to bar any speech or associational claims pressed by these plaintiffs, no injunction should issue on these grounds.

**2. The Equal Protection Claim Lacks Any Merit**

The heart of the storeowners' equal protection claim is that the restrictions do not apply to other industries, bars, or restaurants. The flaws in this argument are obvious on their face: the equal protection clause only requires equal treatment for those *similarly situated.* Since the storeowners are not engaged in "other industries" and they are not bars or restaurants, a comparison of apples and oranges is invited,[4] directly contrary to all applicable precedent. Further, the storeowners simply do not understand or appreciate the fact that the numerous classes of licensees may or may not be regulated by the State, and if so, in different ways. *See,* R.I. Gen. Laws §3-5-6 "There are several classes of beverage licenses, each of which authorizes the doing of things stated in the chapter and sections concerning the class of license." Local licensing authorities have immense regulatory power over bars and restaurants. R.I. Gen. Laws §3-5-15. Therefore, the only "similarly situated" party to whom these plaintiffs can be compared for equal protection purposes is another Class A licensee.

Notwithstanding that elementary flaw in the equal protection argument pressed the first two times this issue arose, this Court went further, actually delving into an equal protection analysis. Both this Court and the First Circuit easily recognized that the regulations do not infringe on any constitutionally protected right, but instead, were "social and economic legislation" that do not "employ suspect classifications or impinge on fundamental rights." 364 F.Supp.2d at 180; see also 418 F.3d at 54 ("The legislation at issue in economic in nature. It

[4] W&S's "contrived attempt to tease an equal protection violation out of this imperfect analogy…" was deemed unpersuasive at the First Circuit. 418 F.3d at 45.

neither utilizes suspect classifications nor trenches upon fundamental rights."). Therefore, the rational basis test is the appropriate yardstick by which these regulations must be measured. As this Court stated:

> As a threshold matter, W&S fails to carry its burden of explaining why it is arbitrary or irrational to prohibit franchise sales of alcoholic beverages by Class A licensees but not by other classes of licensees. Here, the failure to tender such an explanation is especially important because it seems apparent to even a casual observer that significant differences exist between the relatively small number of retailers who exclusively sell unlimited quantities of alcoholic beverages for off-premises consumption to persons who may or may not be the ultimate consumers and the much larger number of restaurants and clubs that dispense alcoholic beverages in measured quantities, often accompanied by food, for on-premises consumption.

364 F.Supp.3d at 180.

The First Circuit concurred:

> The legislation at issue is economic in nature. It neither utilizes suspect classifications nor trenches upon fundamental rights. Its purpose, as stated by the Rhode Island General Assembly, is to protect consumer choice and ensure the equitable pricing of retail liquor products.

481 F.3d at 55.

The death knell for the equal protection claim is the lack of any allegations or evidence that a similarly situated party (a Class A license holder) is being treated differently in some constitutionally significant fashion. "...W&S has wholly failed to show that restaurants and bars (which are licensed to sell alcoholic beverages only for consumption on their licensed premises) are similarly situated entities vis-à-vis package stores (which are licensed to sell alcoholic beverages only in sealed containers and for off-premises consumption)." 418 F.3d at 54.

**C. The Balance of the Harms and the Equities Do Not Support Injunctive Relief**

The only harm these plaintiffs claim is damage to their constitutional rights. Both this Court and the Circuit have indicated that they are incorrect in their mantra-like insistence that their First Amendment rights are being trampled. Rather, the harm to the State is harm to the

very democratic process of government. This law was introduced, debated, and ultimately passed. These plaintiffs had a voice during that process. Their position did not prevail. Now, over a year after the law went into effect, they request that this validly enacted law be enjoined. Enforcement actions are underway at the Department of Business Regulation. The harm to the public is obvious and significant. The harm to these plaintiffs is, like the harm alleged by the original plaintiffs, is largely self-inflicted due to the lapse of time and weakness of argument. Thus, these factors weigh in favor of the State and against injunctive relief.

Finally, the doctrine of clean hands bars the issuance of injunctive relief. These plaintiffs have ignored the law since its inception and should not be rewarded by the grant of injunctive relief.

## III. CONCLUSION

For the foregoing reasons, the Motion should be denied.

Respectfully Submitted,

Defendants
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Pa

Rebecca Tedford Partington #3890
Deputy Chief – Civil Division
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2303
Fax: (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a true copy of the within postage pre-paid, first class mail, on this 18th day of November, 2005 to those indicated below:

Melissa DiFazio

Robert J. Roughsedge, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736

Joseph S. Larisa, Jr., Esq.
Larisa Law and Consulting, LLC
One Citizens Plaza
Providence, RI 02903