UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC., *et al.*
*Plaintiffs,*

*v.*

STATE OF RHODE ISLAND, *et al.*,
*Defendants.*

Civil Action No. 04-418-T

**PLAINTIFFS' MOTION for an ORDER COMPELLING RESPONSES to PLAINTIFFS DOCUMENT REQUESTS and INTERROGATORIES to DEFENDANTS RHODE ISLAND and GREER or IN THE ALTERNATIVE to EXCLUDE ALL DOCUMENTS NOT DISCLOSED IN DISCOVERY**

The State Defendants answered only 8 of 26 interrogatories, admitted or denied only 16 of 52 requests for admissions and produced only 12 documents in response to Plaintiffs' requests for production. *See* **Exhibits A** (RI's objections to Plaintiffs' document requests), **B** (RI's answers to Plaintiffs' interrogatories), **C** (RI's objections Plaintiffs' interrogatories), **D** (RI's responses to Plaintiffs' request for admissions) and **E** (RI's objections to Plaintiffs' request for admissions). The parties anticipate a trial in this matter in April of 2006. The Plaintiffs move this Court for and order compelling responses or in the alternative to exclude the Defendants from offering any evidence at trial that was not disclosed in discovery.

Rhode Island has sought and received extensive discovery from the Plaintiffs, including 1,939 pages of documents plus an additional 6 banker boxes of billing records. In response to Plaintiffs discovery requests, defendants Rhode Island and Greer produced 12 documents, consisting entirely of show cause notices that provide no details or explanations. **Exhibit F** (example Order to Show Cause produced by RI). It hard to believe that Rhode Island does not intend to offer any exhibits at trial other than these 12 show cause notices. Unless the

Defendants do not intend to offer any other documents into evidence at trial, these potential exhibits must be disclosed to the Plaintiffs.

This matter concerns challenges to Rhode Island's statutory restrictions on advertising practices in the retail liquor industry and challenges to limitations on associations between liquor stores. The Plaintiffs, three liquor store owners and an organization that sells management and marketing advice and marketing services to liquor stores, challenge these restrictions based on a number of grounds, including freedom of speech and expressive association, equal protection and the commerce clause.

Prior to filing this motion, the Plaintiffs attempted to narrow the issues by contact counsel for the State defendants and arraigning a telephone conference to discuss the issues. Said conference occurred on Friday, March 3, 2006. This conference failed to resolve the issues raised by this motion.

## NATURE OF THE CASE

Wine & Spirits Retailers, Inc. (W&SR), a Rhode Island corporation, was in the business of franchising liquor store operations in Rhode Island and Massachusetts. In 2004 Rhode Island outlawed franchising in the liquor retail industry. At the same time Rhode Island banned franchises, it also banned liquor stores from engaging in a number of other activities including joint advertising, using a similar or common name, associating with each other to share business planning and marketing strategies. W&SR and its owner John Haronian sued challenging the validity of these restrictions. John Haronian is also the owner of three liquor stores in Massachusetts and therefore is precluded from directly owning a Rhode Island liquor store under another provision challenged by the Plaintiffs. Haronian and W&SR were later joined by three former franchisees of W&SR. Once the provisions of these amendments became effective, the

Plaintiffs altered their business relationship in order to comport with the new statutory requirements. The Plaintiffs changed their relationship from one of franchisor and franchisee to a consulting relationship. The Defendants have argued that this new relationship still violates the new statutory scheme and the Rhode Island Department of Business Regulation has begun enforcement action against the plaintiff liquor stores.

In this action, the Plaintiffs challenged the 2004 amendments, along with two pre-existing aspects of Rhode Island liquor control law, on a number of grounds including freedom of speech (advertising and the giving of advice), freedom of expressive association, equal protection, Commerce Clause, and deprivation of federally protect statutory and constitutional rights.

On February 14, 2005, a group of the Plaintiffs' competitors calling themselves the United Independent Liquor Retailers of Rhode Island (United Independent) intervened to "defend the constitutionality of statutes that it was instrumental in moving to successful passage into law." *United Independent's Motion to Intervene as a Party Defendant.*

## I. Speech and expressive association

Plaintiffs' first challenged §§3-5-11 and 3-5-11.1 as violating their rights to freedom of speech and of expressive association as protected by the First Amendment. Among the First Amendment activities restricted by the challenged statutes are the giving of advice for a fee, joint advertising, associating to speak to prospective consumers, associating to speak to each other in order to share management and marketing strategies, limitations on the name by which the Plaintiffs can identify themselves to the public, and restrictions on the content of signs and advertisements.

The restriction of the giving of paid advice is a restriction of "pure speech" subject to the highest level of First Amendment scrutiny. *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S.

469, 482 (1989) (using "tutoring, legal advice, and medical consultation provided (for a fee)" as examples of speech protected by the First Amendment as pure speech). For pure speech, "[c]ontent based prohibitions may endure – but only if they are justified by compelling state interests. Accordingly, such prohibitions engender strict judicial scrutiny." *Knights of Columbus, Council No. 94 v. Lexington*, 272 F.3d 25, 31 (1st Cir. 2001) (internal citation omitted). Under this standard, the Defendants must "demonstrate that 'the harms it recites are real and that its restriction will in fact alleviate them *to a material degree.*'" *Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 134 F.3d 87, 98 (2nd Cir. 1998) (emphasis in original), *quoting*, *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).

Even if a sufficient interest is established, the State "may not choose means that unnecessarily restrict constitutionally protected liberty" in order to achieve the interest. *Elrod v. Burns*, 427 U.S. 347, 362 (1976), *quoting*, *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973). At trial, the Court "must not only assess the substantiality of the governmental interests asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981).

Restrictions on invitations to enter into commercial transactions are reviewed under the Commercial Speech standard. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976) (defining commercial speech as "speech which does 'no more than propose a commercial transaction'"). Under this standard, a restriction on advertisements or other commercial speech is permissible only upon a showing by the State that either the advertising is misleading, or that (1) the government interest in regulation is substantial, (2) the regulation directly advances that interest, and (3) the regulation is not more extensive than

necessary to serve the interest. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n.*, 447 U.S. 557, 566 (1980). Thus the Defendants must overcome the fact intensive inquiry under the *Central Hudson* standard to sustain the restrictions on Plaintiffs' advertising.

"The commercial speech doctrine protects the communication of truthful information to potential customers about a proposed commercial transaction." *Wine & Spirits*, 418 F.3d at 49, *citing*, *Fox,* 492 U.S. at 482 and *Central Hudson,* 447 U.S. at 561-63. The giving of advice for a fee is also protected speech. *Fox*, *supra.* The First Amendment preserves the right of associating together in order to engage in protected expression. *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech"). "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.*, at 46-61. In defending the restrictions on association for an expressive purpose, the Defendants must "convincingly show a substantial relation" between the restriction and a "compelling governmental interest." *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963). The Plaintiffs' discovery seeks disclosure of the evidence and contentions the Defendants will present in their effort to meet these fact intensive standards.

The State prohibits Plaintiffs from using the same or similar names on the signage used to identify themselves to the public. The determination of what is similar is left to the unfettered discretion of bureaucrats. The State can impose reasonable restrictions on the size of signs. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (reasonable "time, place, or manner"

restrictions, but only if they are "justified without reference to the content of the regulated speech"). But, restrictions that consider the content of the sign are subject to heightened scrutiny. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501-08 (1996) (finding unconstitutional a Rhode Island ban on including liquor prices on signs and in advertising). When restrictions are based on the message conveyed by the sign, they must be reviewed as a content-based restriction on speech. *Lorillard Tobacco Co. v. Reilly/Altadis U.S.A. Inc. v. Reilly*, 533 U.S. 525, 573-74 (2001) (invalidating height restrictions applicable only to tobacco signs because they singled out a specific message – those concerning tobacco products – for different treatment).

After concluding that logos and signs are commercial speech and that their regulation must be reviewed under the *Central Hudson* test (*Bad Frog*, 134 F.3d at 97), the Second Circuit held that although the state contended "that the frog appeals to youngsters and promotes underage drinking," "[t]he truth of these propositions is not so self-evident as to relieve the state of the burden of marshaling some empirical evidence to support its assumptions." *Bad Frog*, 134 F.3d at 100. Plaintiffs discovery requests are relevant to determining what "empirical evidence" the State has to support the restrictions.

## II. Equal Protection

When a state imposes a limitation on a fundamental right, "'critical examination' of the state interests . . . is required." *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) (addressing the fundamental right to marry). The State must demonstrate, first, that it has "sufficiently important state interests" and, second, that the statute "is closely tailored to effectuate only those interests." *Id.*, at 388. Freedom of speech and expressive association are fundamental rights. *Gibson*, 372 U.S. at 544 ("rights of free speech and free association are fundamental").

Plaintiffs contend that the challenged provisions restrict these fundamental rights in a discriminatory manner based on who the speaker is and based on the subject matter of the speech. Such discriminatory restrictions on the fundamental rights are subject to the highest level of scrutiny under the Equal Protection Clause. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972); *Fowler v. Rhode Island*, 345 U.S. 67 (1953).

> [W]hen the government intrudes on one of the liberties protected by the Due Process Clause of the Fourteenth Amendment, 'this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation.' Because the ordinance challenged in this case significantly limits communicative activity within the Borough, we must scrutinize both the interests advanced by the Borough to justify this limitation on protected expression and the means chosen to further those interests.

*Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 70 (1981). When a statute restricts speech, the State must justify that restriction under the First Amendment, when the statute also discriminates as to whom the restriction applies, the State must also justify the restriction under the Equal Protection Clause. *Id.* at 98.

## III. Commerce Clause

Plaintiffs contend that §§ 3-5-10, 3-5-11, and 3-5-11.1 should be declared void under the dormant Commerce Clause, which limits the power of states to erect barriers against interstate trade. *Walgreen Co. v. Rullan,* 405 F.3d. 50, 55 (1st Cir. 2005), *cert. denied,* 126 S. Ct. 1059 (2006). Section 3-5-10 discriminates against interstate commerce on its face and "violates the Commerce Clause unless it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Stephen D. DeVito, Jr. Trucking, Inc. v. Rhode Island Solid Waste Management Corporation,* 770 F. Supp. 775, 780 (D.R.I. 1991), *quoting, New Energy Co. of Ind. v. Limbach, 486* U.S. 269, 278 (1988). Statutes, such as §§ 3-5-11, and 3-5-11.1, which have the effect of significantly favoring in-state commercial interests

over out-of-state interests are subject to the same strict scrutiny. *Walgreen, supra,* 405 F.3d at 55. Even if this Court determines that § 3-5-11.1 regulates in-state and out-of-state interests evenhandedly, the statute is subject to the *Pike* balancing test. *Id.*

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (internal citation omitted).

The requested discovery is relevant because the Supreme Court has made it clear that the dormant Commerce Clause evaluation requires a "sensitive, case-by-case analysis of purposes and effects." *Id.*, quoting *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 , 201 (1994).

## IV. <u>Antitrust Claims</u>

As stated in *Plaintiffs' Statement of Elements to be proven at Trial*, the Plaintiffs also contend that the Rhode Island statutes violate the Sherman Act. 15 U.S.C. §1. Sections 3-5-10, 3-5-11, and 3-5-11.1 restrict efficient and competitive practices and create or facilitate agreement in restraint of competition. In particular, the prohibition against liquor franchises prevents plaintiffs from efficient buying and distribution practices that would result in lower prices and greater choices for Rhode Island consumers. The requested discovery is relevant to plaintiffs' Sherman Act claims for a number of reasons. First, while some of the restraints qualify as *per se* antitrust violations, others may be subject to the rule of reason analysis. Plaintiffs will be required to demonstrate at trial that the "agreement involved the exercise of power in a relevant

economic market, that this exercise had anti-competitive consequences, and that those detriments outweighed efficiencies or other economic benefits." *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004). Once plaintiffs demonstrate antitrust violations and the hybrid nature of the Rhode Island restraints, the State will be required to satisfy the *Midcal* test and prove that the challenged restraints are clearly articulated and affirmatively expressed as state policy and that the policy is actively supervised by the State itself. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980).

## V. <u>**Taking**</u>

The 2004 amendment to the Rhode Island Liquor Control statute, §§3-5-11 (as amended) and 3-5-11.1, deprive the Plaintiffs of their property rights deriving from their reasonable investment backed expectation in their State approved franchises. The Fifth Amendment to the Constitution of the United States provides that, "private property" shall not be "taken for public use without just compensation." *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 234-35 (1897) (due process requires both that the property be taken for a public use and that the owner of the property be compensated by the state for his loss). The Fifth Amendment requires "a full and perfect equivalent for the property taken." An alternative standard in determining the amount of just compensation, "is what has the owner lost, not what has the taker gained." *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) (looking at whether the plaintiff had a reasonable investment-backed expectation in intangible property after determining that the plaintiff did own that intangible property).

The Plaintiffs had a reasonable investment backed expectation in the continued operation of their franchises, including, but not limited to their trade name, which the State is attempting to take through the addition of §3-5-11(b)(1)(vi) to the Liquor Control statute. *Jacob Siegel Co. v. Federal Trade Commission*, 327 U.S. 608, 612 (1946) ("trade names . . . are valuable business assets").

## VI. Twenty-first Amendment Defense

The requested discovery is also relevant to the State's defense that the Twenty-first Amendment to the United States Constitution shields the challenged statutes. Under this theory, the Defendants will be required to prove that the interests implicated by the statutes are so closely related to the State's core concerns under the Twenty-first Amendment that the regulations may prevail, notwithstanding conflict with federal policies. *See, e.g., North Dakota v. United States*, 495 U.S. 423, 432 (1990). This balancing test includes an analysis of whether the "regulatory scheme serves its stated purpose (in other words, 'is the scheme effective?')." *TFWS, Ins. v. Schaefer*, 242 F.3d 198, 213 (4th Cir. 2001). The Supreme Court has reiterated that the Twenty-first Amendment defense is fact intensive and requires careful scrutiny of the competing concerns. *See, e.g., California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980).

## ARGUMENT

## I. Inappropriate objections

Certain objections repeatedly raised by the Defendants are consistently misapplied. This section discusses these objections in general. The individual requests and objections are quoted and address with more particularity below.

**A. Call for a legal conclusion is not a valid objection.**

> An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact.

Fed.R.Civ.P. 33(c). The State defendants repeatedly refuse to respond to Plaintiffs' discovery requests on the grounds of "Calls for a legal conclusion." Where an interrogatory seeks "an opinion or contention that relates to fact or the application of law to fact", this objection is baseless. *Id.* When the Plaintiffs ask "[i]f it is your contention that §§3-5-11 (as amended) and/or 3-5-11.1 are narrowly tailored to achieve any of the interest identified in your answer to Interrogatory No. 9 above, state the basis for that contention", the interrogatory properly asks the Defendants to state their contention related to the application of law to fact.

Had the Plaintiffs asked the State to declare whether or not the challenged statutes are narrowly tailored, this would be a request for a pure legal conclusion. But, Rule 33(c) explicitly permits interrogatories that seek disclosure of a party's "contention that relates to . . . the application of law to facts." So the Plaintiffs are permitted to ask the State to explain its contention that the challenged statutes meets the fact specific narrow tailoring analysis.

In fact, the instruction for the "state the basis" interrogatories used by the Plaintiffs in their interrogatories is taken word for word from Rule 26.5 of the Local Rules of the U.S. District Court for the Massachusetts, which provides a uniform definition for "[w]hen an interrogatory calls upon a party to 'state the basis' of or for a particular claim, assertion, allegation, or contention."[1] This uniform definition adopted by this Court's sister court in

---

[1] Local Rule of the U.S. District Court for the District of Massachusetts reads:

> When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall

Massachusetts is permissible because Rule 33(c) specifically permits delving into the legal contentions of the parties related to the facts of the case.

**B. References to pleadings and unspecified documents in lieu of answering**

The Defendants respond to several requests by referring to the "legal memoranda filed in this case" or to the "pleadings filed herein." Legal memoranda, other pleadings and deposition transcripts are not the kinds of documents permitted to be disclosed in lieu of answering an interrogatory. *See* Fed.R.Civ.P. 33(d) (permitting specific and detailed references to business records); *U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 577-78 (M.D.N.C. 2002) ("the documents plaintiff intends to use are not business records as required by Rule 33(d). Pleadings, depositions, exhibits, and affidavits which plaintiff intends to use are not Rule 33(d) business records" (footnote omitted)); *Melius v. National Indian Gaming Com'n*, 2000 WL 1174994, *1 (D.D.C. 2000) ("A submission by that party's counsel which cross-references pleadings and exhibits is simply not an answer to that interrogatory by that party").

**C. Deliberative Privilege**

> The deliberative process privilege focuses on advisory opinions, recommendations, and deliberations constituting a part of a process by which governmental decisions and policies are formulated. The privilege does not extend to purely factual materials, even if they are used in determination of policy.

---

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

*Woodland Manor III Associates, L.P. v. Keeny*, 1995 WL 941473 (R.I.Super.1995), *citing*, *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 640 (S.D.N.Y.1991). This privilege is limited in both its reach and in the procedural requirements for its assertion.

It may only be asserted by the head of the agency and then only if he or she has issued guidelines on the use of the privilege. *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991). "The assertion of the privilege by an attorney is therefore improper." *Id.*, citing, *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 519 (D.Del. 1980). No department head has asserted the privilege and no "guidelines on the use of the privilege" have be cited in the objections.

### D. Legislative Privilege

The legislative privilege, when applicable at all, only acts as a testimonial privilege. *Miles-Un-Ltd, Inc. v. New Shoreham*, 917 F.Supp. 91, 100 (D.N.H. 1996) ("Although the doctrine of legislative immunity does apply in the personal testimony realm, the immunity does not extend to certain types of documentation requests . . . Accordingly, a defendant will be required to produce, at the request of a plaintiff, any documents that were prepared by a committee during the course of its deliberations"). The Plaintiffs agree that they cannot take the depositions of the members of the General Assembly. They do not seek to do so. What the Plaintiffs have done is serve interrogatories and document requests on the State seeking disclosure of its factual contentions and evidence in this matter.

### E. Relevance

For purposes of discovery, the question of relevance is to be read broadly. Evidence need not be admissible to be relevant and thus discoverable. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29-30 (1984). Rule 26(b)(1) states, "Parties may obtain discovery regarding any matter, not

privileged, that is relevant to the claim or defense of any party." A party objecting to discovery on the grounds of relevancy has a very heavy burden to meet and courts are to err on the side of permitting the discovery. "We do not believe it is either necessary or desirable for a court to attempt to probe sophisticated issues on an undeveloped record. If, at this stage of the proceedings, a lack of materiality is not apparent, then an inquiring court should err, if at all, on the side of liberality." *Resolution Trust Corp. v. North Bridge Assoc.*, 22 F.3d 1198, 1208 (1st Cir. 1994). "Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low." *Id.* at 1207.

### F. The Defendants bear the burden of supporting their objections

An objecting party bears the burden of demonstrating why the discovery sought should not proceed. *In Re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 305 (S.D.N.Y. 1982); 8 Wright & Miller, Federal Practice and Procedure: Civil § 2214, p 644 (1970).

### G. Privilege Log

Although the State has repeatedly refused to produce documents based on the assertion of various privileges, it has not produced a privilege log as required to support a privilege objection by Rule 26(b)(5).

## II. Analysis of individual objections and responses.

### A. What is the purpose of the amendments?

Under the *Central Hudson* test for reviewing restrictions on commercial speech, the Court must determine "whether the interests asserted by the state in order to justify the speech regulations are substantial." *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1069 (10th Cir. 2001). At trial,

> 'the government bears the responsibility of building a record adequate to clearly articulate and justify' these state interests. Not only is this the government's burden, but courts may not help; the Supreme Court has clearly stated that courts may not 'supplant the precise interests put forward by the State with other suppositions.'

*Id.* at 1069 (internal citations omitted). The Defendants also must establish that the purported purpose of the amendments offered at trial is in fact the purpose behind the restrictions. *See e.g. Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 93 (1977); *Granholm v. Heald*, 125 S.Ct. 1885, 1907 (2005); *Shaw v. Hunt*, 517 U.S. 899, 910 (1996).

> **Interrogatory No. 6.** What is the legislative purpose of §3-5-10.
>
> OBJECTION: Calls for a legal conclusion.
>
> **Interrogatory No. 7.** What is the legislative purpose of §3-5-11 (as amended).
>
> OBJECTION: Calls for a legal conclusion.
>
> **Interrogatory No. 8.** What is the legislative purpose of §3-5-11.1.
>
> OBJECTION: Calls for a legal conclusion.
>
> **Interrogatory No. 9.** If it is your contention that §3-5-10 and/or 3-5-11 (as amended) and/or 3-5-11.1 are supported by either a compelling state interests, or a significant state interest, for each such interest please state: the interest; who identified the interest; when the interest was identified; and identify any documents describing or memorializing the interest.
>
> OBJECTION: Overbroad, immaterial, irrelevant, not reasonably calculated to lead to the discovery of relevant evidence. Calls for a legal conclusion. Further, the information sought is subject to the legislative privilege.

While the question of whether the interest behind the statutes is sufficiently compelling to justify the restrictions on speech and expressive association is a question of law, the question what those interests are, is not. At trial, the State will be required to establish that the interest offered as the purpose of the statutes is in fact the actual interest of the statutes and not one devised for purposes of litigation. *Linmark*, *supra*; *Granholm*, *supra*; *Shaw*, *supra*. This is the question of fact addressed by Interrogatories Nos. 6-9.

As discussed above, the "calls for a legal conclusion" is not a valid objection. Interrogatories Nos. 6-9 seek facts, not legal conclusions. To the extent any legal opinion is required in the answer, it is "an opinion or contention that relates to fact or the application of law to fact" and therefore is specifically permitted by Rule 33(c).

At trial, the Court will be required to engage in an exacting examination of the purpose and function of the challenged statutes. *Turner Broadcasting Sys. v. FCC*, 512 U.S. 622, 642 (1994) (courts must devote "the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens on speech because of its content"). In doing so, the purpose offered by the Defendants will only suffice if the record "[told] a story that support[ed] Dedham's stated purpose." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 741 (1st Cir. 1995) ("a governmental interest woven exclusively out of the gossamer threads of speculation and surmise cannot be termed substantial").

In Interrogatory Nos. 9 and 10 (addressed below), the Plaintiffs have sought disclosure of the purpose of the challenged statutes and of evidence of their narrow tailoring. In response, the State defendants have objected based on the legislative privilege.

The assertion of the legislative testimonial privilege is equally misplaced. *Miles-Un-Ltd, Inc.*, 917 F.Supp. at 100. Plaintiffs do not seek the testimony of members of the General Assembly. Plaintiffs seek disclosure of the contentions the State will make at trial concerning a fact they have the burden of proving – the identity of the purpose of the restrictions. *Granholm*, 125 S.Ct. at 1907; *Shaw*, 517 U.S. at 910, *Utah Licensed Beverage Ass'n*, 256 F.3d at 1069.

The purpose of Plaintiffs' request is not to determine the motivation of the individual legislators in voting for the amendments, or even the motivation of the General Assembly as a whole. The interrogatories seek disclosure of the purpose that the Defendant's will offer at trial

in defense of the statutes just as Interrogatory No. 10, addressed below, simply seeks disclosure of the contentions the State must make at trial that the statutes meet the narrow tailoring requirements of the various applicable constitutional standards of review.

By asserting this privilege is the State saying it will not offer any evidence at trial on the compelling interest or of narrow tailoring prongs of heightened scrutiny? Or will the State suddenly waive its claim of privilege during the trial and offer evidence purporting to show sufficient of the interest and of the tailoring? Interrogatories Nos. 9 and 10 also concern facts and contentions of the State defendants and not the motivations of the members of the General Assembly in voting to enact the challenged statutes.

The Plaintiffs seek production of all documents supporting the asserted purpose in two document requests to the State defendants.

> **Document Request No. 2.** Any documents evidencing the legislative purpose(s) of the Amendments [§§3-5-11 (as amended) and 3-5-11.1].
>
> RESPONSE: See Title 3 of the Rhode Island General Laws.
>
> **Document Request No. 3.** Any documents evidencing the legislative purpose(s) of §3-5-10.
>
> RESPONSE: See Title 3 of the Rhode Island General Laws.

Rhode Island has produced no documentation to support the validity of the asserted purpose other than the statute itself. At trial, the State should be precluded from offering any purpose inconsistent with the specific language of the statute or to offer any documentation beyond the statute itself to meet its heavy burden at trial of establishing the precise interest purporting to justify the restrictions of §§3-5-10, 3-5-11 (as amended), or 3-5-11.1.

While the state will defend the statute based on some as yet unidentified purpose, the Plaintiffs intend to establish the true purpose as naked protectionism. Intervening Defendants,

United Independent, has boasted that it drafted the 2004 amendments to Title 3 that are among the three provisions challenged. It did so to weaken more efficient competitors. Even under the lowest level of constitutional review, courts have held such naked protectionism to be unconstitutional. *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose"). Identification of the true purpose is also a relevant question fact because it dictates that level of constitutional scrutiny the Court will need to apply. *Knights of Columbus, Council No. 94 v. Lexington*, 272 F.3d 25, 31 (1st Cir. 2001) ("To ascertain whether a regulation is content-based, an inquiring court must determine whether it regulates speech because of disagreement with the particular message that the speech conveys").

The Plaintiffs have requested documents concerning United Independent's involvement in the drafting and passage of the challenged Amendments. The State has refused to produce these documents citing only relevance grounds as an objection.

> **Document Request No. 25.** All correspondence or other documents evidencing communications between the DBR and United Independent.
>
> OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.

The State similarly refused to admit or deny United Independent's role in the passage of the Amendments.

> **Request for Admission No. 21.** United Independent assisted in the drafting of the Amendments.
>
> Response: Objection. Immaterial, irrelevant, not reasonably calculated to lead to the discovery of relevant evidence.

The involvement of the Plaintiffs' competitors in the passage of the statutory amendments that outlawed their business practices is highly probative of whether these amendments serve the

illegitimate and illegal purpose of "protecting a discrete interest group from economic competition."

**B. Are the amendments narrowly tailored?**

> **Interrogatory No. 10.** If it is your contention that §§3-5-11 (as amended) and/or 3-5-11.1 are narrowly tailored to achieve any of the interest identified in your answer to Interrogatory No. 9 above, state the basis for that contention.
>
> OBJECTION: Overbroad, immaterial, irrelevant, not reasonably calculated to lead to the discovery of relevant evidence. Calls for a legal conclusion. Further, the information sought is subject to the legislative privilege.

While the ultimate question of whether the steps taken by the State to narrowly tailor its statute is a question of law, the identification of what steps were taken by the State is a question of fact. *Anderson v. City of Boston*, 375 F.3d 71, 80 (1st Cir. 2004) (narrow tailoring analysis is a mixed question of fact and law). At trial, the State will need to produce evidence of is the effectiveness restrictions at achieving that purpose. *Lorillard Tobacco Co. v. Reilly/Altadis U.S.A. Inc. v. Reilly*, 533 U.S. 525, 566 (2001) ("A regulation cannot be sustained if it 'provides only ineffective or remote support for the government's purpose . . . or if there is 'little chance' that the restriction will advance the State's goal"), *quoting, Edenfield v. Fane*, 507 U.S. 761, 770 (1993) and *Greater New Orleans Broadcasting Association v. United States*, 527 U.S. 173, 193 (1999). It refuses to disclose that evidence, or to admit that such evidence does not exist. The defendants should either be forced to disclose the evidence they intend to offer concerning narrow tailoring or be precluded from offering any such evidence at trial.

As addressed in the discussion of Defendants' objections to Interrogatory No. 9 above, the legislative privilege does not apply to written discovery requests to the State, only to testimony sought from individual legislators.

> **Document Request No. 4.** Any documents evidencing the effectiveness of the amendments at achieving the purpose(s) of the amendments.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any documents generated as a result of any administrative action prior to the show cause stage are privileged. Without waiving that objection, none yet, other than the Orders to Show Cause attached hereto.

**Document Request No. 10.** Any documents evidencing price fixing activities related to the sale of alcoholic beverages by any liquor store, wholesaler, supplier, franchisor, franchisee, consultant or any other individual or entity.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Without waiving that objection, please refer to advertisements, advertised sales lists, marketing bulletins, emails, invoices and other documents produced during the course of this litigation, as well as the testimony given by John Haronian and David Morrocco during the course of this litigation.

As discussed above, the deliberative privilege is has not been properly invoked by the Defendants. Effectiveness of the statutes at achieving their stated purpose is an element of the narrow tailoring analysis, and therefore relevant. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 468 (1996) ("a commercial speech regulation may not be sustained if it provides only ineffective or remote support for the government's purpose"). Based on the limited response of the State to this request, it should be precluded from offering any evidence related to the effectiveness of the amendments other than the Orders to Show Cause provided in response to Plaintiffs' Document Request No. 4. While the response to No. 10 goes further than the State's other responses, it does not, in any way indicate which "advertisements, advertised sales lists, marketing bulletins, emails, invoices and other documents produced during the course of this litigation" the State is relying on.

The State must also show that it does not have alternatives available by which it could achieve the purpose without restricting protected activities. *Id.* The State has refused to produce any such evidence in discovery and therefore should be precluded from doing so at trial.

**Document Request No. 5.** Any documents concerning alternative methods of achieving the purpose(s) of the amendments.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.

**C. Anti-Trust/consumer protection**

While the State has stated that is "not specifically alleging a violation of any federal or state anti-trust laws in this action." in response to one of the few interrogatories they responded to, it has not foreclosed arguing that the Plaintiffs' behavior is anti-competitive. Throughout this litigation, the State has defended its statutes as a valid exercise of the State's power "to help the consumer by protecting their choices and ensuring equitable pricing." *See* §3-5-11.1. The Plaintiffs propounded two interrogatories and a number of document requests that seek disclosure of the supposed harms to the consumer that are being addressed through the restrictions.

**Interrogatory No. 18**. Identify every harm to the public that results from the franchise relationship that existed between the Plaintiffs prior to the enactment of the Amendments.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, calls for a legal conclusion. Without waiving, see pleadings filed herein.

**Interrogatory No. 19**. Identify every harm to the public that results from the current relationship between the Plaintiffs.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, calls for a legal conclusion. Without waiving, see pleadings filed herein.

**Document Request No. 29.** Any statistical data related to the pricing of alcoholic beverages in Rhode Island.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.

**Document Request No. 30.** All tax records or other records indicating the revenues generated or volume of sales from the sale of alcoholic beverages by individual stores holding a Class A liquor license during the past twelve months.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.

In addition to these requests and interrogatories being clearly relevant to the defense offered by the State throughout this litigation, the "calls for a legal conclusion" objection to Interrogatory Nos. 18 and 19 are inappropriate because these interrogatories seek disclosure of the Defendants "opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(c). Interrogatory Nos. 18 and 19 ask the State to disclose its contention, if any, that the Plaintiffs' conduct is harmful to their stated purpose of the challenged statutes of "help[ing] the consumer by protecting their choices and ensuring equitable pricing."

The State's response to Interrogatory Nos. 18 and 19 are insufficient under Rule 33(d). "A submission by that party's counsel which cross-references pleadings and exhibits is simply not an answer to that interrogatory by that party." *Melius*, 2000 WL 1174994, *1. In order to rely on Rule 33(d),

> The producing party must satisfy a number of factors in order to meet its justification burden. First, it must show that a review of the documents will actually reveal answers to the interrogatories. In other words, the producing party must show that the named documents contain all of the information requested by the interrogatories.

*U.S. S.E.C.* , 206 F.R.D. at 576 (internal citation omitted). The State cannot meet that burden with its non-specific reference to categories of documents. At the very least the State should have made specific references to documents using the bates numbers of the documents produced by the Plaintiffs in discovery or to deposition exhibit numbers. If the Defendants are referring to documents other than deposition exhibits or document produced by the Plaintiffs, these documents have never been produced and the Plaintiffs cannot be expected to find answers to their interrogatories through them. Fed.R.Civ.P. 33(d) ("A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained").

Document Requests 29 and 30 seek documentation that can prove or disprove the allegation that the business relationship of the Plaintiffs is anti-competitive or negatively impacts "consumer . . . choices" or "equitable pricing." The State cannot establish that these requests are irrelevant while at the same time maintaining the position that the challenged statutes "ensur[e] equitable pricing."

### D. Unclean hands

Throughout this litigation, the Defendants have argued that the Plaintiffs have unclean hands. They have also argued that the impact of the challenged statues on the expressive and associative activities of the Plaintiffs is limited. The following interrogatories and document requests seek disclosure of what the State contends to be the impact of the statute on the Plaintiffs and to explore what it contents to be the unclean actions of the Plaintiffs – purportedly denying them the right to injunctive relief.

> **Interrogatory No. 11.** If you contend that the relationship between W&SR and any liquor store constituted an illegal chain store operation under §3-5-11, as that statute existed prior to the Amendments, state the basis for that contention. Please identify with particularity the provisions of §3-5-11 you believe were being violated and the activities that you contend constituted a violation of those provisions.
>
> OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any action taken prior to the issuance of an Order to Show Cause is exempt from discovery pursuant to the deliberative process privilege.
>
> **Interrogatory No. 13.** Identify each activity or action of W&SR, John Haronian, Douglas Wine & Spirits - Cumberland, Inc., Douglas Wine & Spirits - Cranston, Inc., or Douglas Wine & Spirits North Providence, Inc. that you contend violates §3-5-11 (as amended). In your answer, identify with particularity the provision(s) of §3-5-11 (as amended) that you contend each activity violates.
>
> OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any action taken prior to the issuance of an Order to Show Cause is exempt from discovery pursuant to the deliberative process privilege. Without waiving that objection, please refer to the Orders to Show Cause, attached hereto.

**Interrogatory No. 14.** Identify each activity or action of W&SR, John Haronian, Douglas Wine & Spirits - Cumberland, Inc., Douglas Wine & Spirits - Cranston, Inc., or Douglas Wine & Spirits North Providence, Inc. that you contend violates §3-5-11.l. In your answer, identify with particularity the provision(s) of §3-5-11.1 that you contend each activity violates.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any action taken prior to the issuance of an Order to Show Cause is exempt from discovery pursuant to the deliberative process privilege. Without waiving that objection, please refer to the Orders to Show Cause, attached hereto.

**Request for Admission No. 17.** Prior to the effective date of the Amendments, the DBR did not take any adverse action because of the franchise agreement between the Plaintiffs.

Response: Objection. Immaterial, irrelevant, not reasonably calculated to lead to the discovery of relevant evidence.

**Request for Admission No. 20.** The DBR did not make any findings that the relationship between the Plaintiffs was an illegal chain store operation under the pre-amendment version of §3-5-11.

Response: Objection. Immaterial, irrelevant, not reasonably calculated to lead to the discovery of relevant evidence.

**Document Request No. 6.** Any documents evidencing unlawful behavior by W&SR.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any documents generated as a result of any administrative action prior to the show cause stage are privileged. Without waiving that objection, please refer to the depositions of Brian Hein and David Morrocco taken in the course of this litigation.

**Document Request No. 7.** Any documents evidencing unlawful behavior by John Haronian.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any documents generated as a result of any administrative action prior to the show cause stage are privileged.

**Document Request No. 8.** Any documents evidencing unlawful behavior by any franchisees of W&SR.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any documents generated as a result of any administrative action prior to the show cause stage are privileged. Without waiving that objection, refer to the Orders to Show Cause attached hereto, and the depositions of Brian Hein and David Morrocco taken in the course of this litigation.

**Document Request No. 9.** Any documents evidencing unlawful behavior by any liquor store that has a consulting agreement with W&SR.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any documents generated as a result of any administrative action prior to the show cause stage are privileged. Without waiving that objection, refer to the Orders to Show Cause attached hereto, and the depositions of Brian Hein and David Morrocco taken in the course of this litigation.

**Document Request No. 10.** Any documents evidencing price fixing activities related to the sale of alcoholic beverages by any liquor store, wholesaler, supplier, franchisor, franchisee, consultant or any other individual or entity.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Without waiving that objection, please refer to advertisements, advertised sales lists, marketing bulletins, emails, invoices and other documents produced during the course of this litigation, as well as the testimony given by John Haronian and David Morrocco during the course of this litigation.

**Document Request No. 27.** Any documents evidencing any joint purchasing of alcoholic beverages by any of the Plaintiffs.

OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence. Further, any such documents might contain material protected by the attorney client, work product and/or deliberative process privileges.

The relevance objections above demonstrate the contempt with which the State has treated the discovery process in this case. The State has repeatedly told the Court that the Plaintiffs' "unclean hands" bars them from seeking injunctive relief. But they refuse to produce any evidence of "unclean hands" because such evidence would be irrelevant at trial. The only response to these requests and interrogatories was the production of 12 show cause notices and vague references to depositions. As can be seen from an example of one of these notices (**Exhibit F**), they provide no details or specifics. The notices merely state that there will be a hearing and cite the statute. Unless the Defendants intend to only offer these show cause notices and nothing else as evidence of unclean hands, they must respond to these requests or the Plaintiffs will face a trial by ambush.

### E. Application of the statutes to the Plaintiffs

The Defendants have also argued that the restrictions on constitutionally protected activities imposed by the challenged statutes are not as extensive as the Plaintiffs allege. They have argued that this limited applicability should narrow the scope of the Court's review and should dictate a lower level of constitutional scrutiny. Yet the State refuses to disclose its contention on this issue on the grounds of relevance.

> **Interrogatory No. 15.** If you contend that any aspect of the consulting agreements between W&SR and Douglas Wine & Spirits - Cumberland, Inc. (bates numbers CUMB0084-CUMB0085), Douglas Wine & Spirits - Cranston, Inc. (CRAN0096-CRAN0097), or Douglas Wine & Spirits N. Providence, Inc. (NPRV0060-NPRV006 1) violate any provision of §3-5-11 (as amended), identify both the specific language of the consulting agreements you contend violates §3-5-11 (as amended) and specific provision of §3-5-11 (as amended) that you contend is being violated.
>
> OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.
>
> **Interrogatory No. 16.** If you contend that any aspect of the consulting agreements between W&SR and Douglas Wine & Spirits - Cumberland, Inc. (bates numbers CUMB0084-CUMB0085), Douglas Wine & Spirits - Cranston, Inc. (CRAN0096-CRAN0097), or Douglas Wine & Spirits N. Providence, Inc. (NPRV0060-NPRV006 1) violate any provision of §3-5-11.1, identify both the specific language of the consulting agreements you contend violates §3-5-11.1 and specific provision of §3-5-11.1 that you contend is being violated.
>
> OBJECTION: Overbroad, irrelevant, immaterial, not reasonably calculated to lead to the discovery of relevant evidence.

Unless the State is prepared to stipulate that nothing in the agreements between the Plaintiffs violates the subject statutes, these interrogatories are highly relevant to the scope of review the Court will need to do in determining if the provisions unconstitutionally restrict the Plaintiffs' business activities.

## CONCLUSION

The Constitutional and statutory review of the challenged statutes will require the Court to consider a number of facts concerning the identity of the purpose of the provisions, the

sufficiency of the tailoring, the availability of alternative methods of achieving the purpose, and the application of the restrictions to the activities of the Plaintiffs. The determination the appropriate standard of review requires factual determination concerning the purpose and effect of the statutes. Additionally, the "unclean hands" argument of the Defendants is entirely a fact-based argument. Despite all of these factual contentions the State must make at trial, it has refused to respond to discovery in any meaningful manner.

This Court should compel responses to these requests or preclude the State from offering evidence or argument on the topics on which the State has not cooperated in discovery.

## REQUEST FOR ORAL ARGUMENT

It is believed that oral argument may assist the Court in its consideration of this motion. One hour of oral argument is respectfully requested.

Respectfully submitted,

WINE & SPIRITS RETAILERS, INC., *et al.*

By their Attorneys,

Robert J. Roughsedge (#5876)
Evan T. Lawson (*pro hac vice*)
Michael Williams (*pro hac vice*)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile: (617) 439-3987

Dated: March 17, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WINE & SPIRITS RETAILERS, INC., *et al.*
*Plaintiffs,*
*v.*
STATE OF RHODE ISLAND, *et al.*,
*Defendants.*

Civil Action No. 04-418-T

**CERTIFICATE OF SERVICE**

The undersigned attorney for the Plaintiffs hereby certifies that true copies of the *Plaintiffs' Motion for an Order Compelling Responses to Plaintiffs Document Requests and Interrogatories to Defendants Rhode Island and Greer or in the Alternative to exclude all documents not Disclosed in Discovery* were served upon the following attorneys of record by mail on this 17th day of March, 2006:

Rebecca Partington
Deputy Chief – Civil Division
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Joseph S. Larisa, Jr.
Larisa Law and Consulting, LLC
55 Dorrance Street, Suite 301B
Providence, RI 02903

Robert J. Roughsedge #5876