STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
DEPARTMENT OF BUSINESS REGULATION
233 RICHMOND STREET
PROVIDENCE, RI 02903

| | |
|---|---|
| IN THE MATTER OF:<br><br>People's Liquor Warehouse-Hopkinton, Inc.<br>d/b/a People's Liquor Warehouse,<br><br>RESPONDENT. | DBR No. 06-L-007 |
| IN THE MATTER OF:<br><br>People's Liquor Warehouse-Apponaug, Inc.<br>d/b/a People's Liquor Warehouse,<br><br>RESPONDENT. | DBR No. 06-L-008 |
| IN THE MATTER OF:<br><br>People's Liquor Warehouse of Cranston, LLC<br>d/b/a People's Liquor Warehouse,<br><br>RESPONDENT. | DBR No. 06-L-009 |
| IN THE MATTER OF:<br><br>MAB Liquors, Ltd.<br>d/b/a Douglas Wine & Spirits-Cranston,<br><br>RESPONDENT. | DBR No. 06-L-0010 |

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>**Delta Wine & Spirits, Inc.**<br>**d/b/a Douglas Wine & Spirits-Smith St.**<br><br>**RESPONDENT.** | **DBR No. 06-L-011** |
| **IN THE MATTER OF:**<br><br>**Douglas Liquors, Inc.**<br>**d/b/a Douglas Wine & Spirits-No. Providence, Inc.,**<br><br>**RESPONDENT.** | **DBR No. 06-L-012** |
| **IN THE MATTER OF:**<br><br>**Liquor Depot East Providence, Inc.**<br>**d/b/a Douglas Wine & Spirits-**<br>**East Providence, Inc.,**<br><br>**RESPONDENT.** | **DBR No. 06-L-013** |
| **IN THE MATTER OF:**<br><br>**No. Smithfield Wine & Spirits, Inc.**<br>**d/b/a Douglas Wine & Spirits-**<br>**North Smithfield, Inc.**<br><br>**RESPONDENT.** | **DBR No. 06-L-014** |
| **IN THE MATTER OF:**<br><br>**CSW Operating Company**<br>**d/b/a Douglas Wine & Spirits-Cumberland,**<br><br>**RESPONDENT.** | **DBR No. 06-L-015** |

IN THE MATTER OF:

Putnam Pike Liquors, Inc.
d/b/a Douglas Wine & Spirits-44

RESPONDENT.

DBR No. 06-L-016

IN THE MATTER OF:

Knights Wine & Spirits, Inc.
d/b/a Douglas Wine & Spirits-Johnston, Inc.,

RESPONDENT.

DBR No. 06-L-017

## DECISION

## I. INTRODUCTION

In 2004, the Rhode Island General Assembly amended R.I. Gen. Laws § 3-5-11 and enacted R.I. Gen. Laws § 3-5-11.1. R.I. Gen. Laws § 3-5-11.1, effective on April 1, 2005, prohibited the Department of Business Regulation ("Department") from granting, issuing, renewing, and/or transferring Class A liquor licenses[1] to or for the use of any liquor franchisor or franchisee. R.I. Gen. Laws § 3-5-11(a), also effective on April 1, 2005, prohibited the Department from granting, issuing, or transferring Class A liquor licenses to or for the use of any "chain store organization." R.I. Gen. Laws § 3-5-11(b)(1)(vi) defines "chain store organization" as:

> [a]ny group of one or more holders of Class A liquor licenses who engage in one or more of the following practices with respect to the business conducted under such licenses, either directly or indirectly or have any direct or indirect beneficial interest in the following practices:
>
> ...
>
> (vi) [a]ny term or name identified as a chain or common entity.

[1] All of the Respondents in this matter are Class A liquor licensees pursuant to R.I. Gen. Laws § 3-7-3.

On January 6, 2006 the Director of the Department issued separate Orders to Show Cause, Notice of Hearing, and Appointment of Hearing Officer ("Order to Show Cause" attached as Exhibit 1) to each of the above-captioned Respondents for operating as a "chain store organization" in violation of R.I. Gen. Laws § 3-5-11 due to the use of a "same or materially similar name as another Class A licensee" (see Order to Show Cause, paragraph 5) as defined in R.I. Gen. Laws § 3-5-11(b)(1)(vi). The Orders to Show Cause allege that the above-captioned Respondents failed to comply with two (2) Departmental Bulletins dated September 21, 2005 (attached as Exhibit 2) and December 15, 2005 (attached as Exhibit 3) issued to all Class A liquor licensees explaining and informing the affected licensees regarding the prohibition of Class A licensees from using the same or materially similar names. Paragraph 4 of the September 21, 2005 Bulletin directed all of the Respondents to submit and obtain approval for a name dissimilar than other Class A licensees by December 31, 2005 in order to comply with R.I. Gen. Laws § 3-5-11(b)(1)(vi). The Department alleges in its Orders to Show Cause that Respondents have violated a directive of the Department and are engaged in a business practice prohibited by R.I. Gen. Laws § 3-5-11 and therefore, requests that pursuant to R.I. Gen. Laws § 3-5-11(b)(4) Respondents' licenses be revoked, or alternatively, the licensees be ordered to cease and desist from the prohibited practices and that a fine be imposed for the violation.

A pre-hearing conference on the Orders to Show Cause was held on February 16, 2006. At that time, counsel for the Department and the Respondents agreed to consolidate the above-captioned matters. On March 20, 2006, the Department filed a Motion and Memorandum of Law in Support of its Motion for Summary Judgment. On April 28, 2006, the Respondents filed their Memorandum in Support of their Opposition to the Department's Motion for Summary Judgment and their Cross-Motion for Summary Judgment. On May 10, 2006, the Respondents submitted a supplemental letter and case in support of their Objection and Cross-Motion for

Summary Judgment. On May 18, 2006, a status conference was held to determine whether the Department wanted to reply to Respondents' Objection and Cross-Motion for Summary Judgment. The Department did not reply in writing to Respondents' Objection and Cross-Motion for Summary Judgment and the parties requested that a Decision on the pleadings be issued.

It should also be noted that the undersigned Hearing Officer is also adjudicating another matter involving the same Respondents in a consolidated matter, DBR Numbers 05-L-0225 through to and including 05-L-0232, which addresses whether or not the Respondents are violating the other prohibited activities in R.I. Gen. Laws § 3-5-11(b)(1) and (2) other than R.I. Gen. Laws § 3-5-11(b)(1)(vi) (the bar against any term or name identified as a chain or common entity).

Additionally, the Wine and Spirits Retailers Inc. and John Haronian (referred to collectively as "W&S") filed a civil action on September 28, 2004 in the United States District Court for the District of Rhode Island against the State of Rhode Island and the Department seeking to declare R.I. Gen. Laws §§ 3-5-11 and 3-5-11.1 unconstitutional and enjoin the enforcement of the statutes by the Department. *See Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island and Providence Plantations and Jeffrey J. Greer, in his capacity as Associate Director of the Rhode Island Department of Business Regulation*, 364 F. Supp. 2d 172, 175 (D. R.I. 2005). W&S is the franchisor with whom the Respondents in this matter have a franchisee agreement under the name Douglas Wine & Spirits. The United States District Court for the District of Rhode Island denied W&S's motion for a preliminary injunction. *Id.* at 183. W&S appealed the federal District Court's denial of its motion for a preliminary injunction to the United States Court of Appeals for the First Circuit and on August 10, 2005, said court affirmed the District Court's denial of the motion for preliminary injunction.

*Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island and Providence Plantations and Jeffrey J. Greer, in his capacity as Associate Director of the Rhode Island Department of Business Regulation*, 418 F.3d 36, 2005 (1st Cir.).

## II. JURISDICTION

The Department has jurisdiction over the Respondents as Class A liquor licensees pursuant to R.I. Gen. Laws §§ 3-5-1 *et seq.* and 3-7-1 *et seq.*

## IV. ISSUE

The issue in this matter is whether Respondents' use of the term or names as stipulated constitutes prohibited operation as a "chain store organization" as defined in R.I. Gen. Laws § 3-5-11(b)(1)(vi). If it is deemed to be a violation, the Hearing Officer must then determine an appropriate remedy for the violation of R.I. Gen. Laws § 3-5-11 pursuant to R.I. Gen. Laws § 3-5-11(b)(4).

## V. UNDISPUTED FACTS

The Department and Respondents agree that:

A. R.I. Gen. Laws §§ 3-5-11 and 3-5-11.1 were amended and enacted, respectively, in 2004, and were effective as of April 1, 2005.

B. On September 21, 2005 the Department issued Bulletin 2005-2 to all Class A Licensees and Wholesalers. This Bulletin clarified four (4) questions relating to the types of practices prohibited by the amendment and enactment of R.I. Gen. Laws §§ 3-5-11 and 3-5-11.1 and informed Class A licensees that the statutory changes eliminate any chain store and alcoholic beverage franchisor/franchisee relationships. The Bulletin specifically stated that it was "not meant to be an exhaustive list of prohibited practices as set forth in the law, but rather will serve

to provide an overview of certain prohibited practices for which enforcement action will be taken."

C. Bulletin 2005-2 stated that the following practice is prohibited:

> [E]xistence of Class A licensees with the same or materially same names. By April 1, 2006, each retail licensee will be required to operate under a name totally dissimilar from other Class A licensees with the exception that a full proper legal name may be used as a business name. For example, if there is more than one licensee operating under the name "Smith's Liquors" the same name should be changed to a totally dissimilar name or, if the owner is named Smith, the name may be changed to the full legal name of the owner such as "Joe Smith's Liquors," to demonstrate appropriate differentiation. Accordingly, two (2) or more stores currently named in a manner such as "Hank's Liquors of Smithfield" and "Hank's Liquors of Newport" will not be considered a sufficient differentiation of name...The Department encourages all licensees to call with any further questions they may have about operating under R.I. Gen. Laws § 3-5-11 and 11.1.

D. From October 25, 2005 to October 31, 2005, the Respondents proceeded to change their "full proper legal name" with the Secretary of State's office:

1. from PLW-Hopkinton, Inc. to Peoples Liquor Warehouse-Hopkinton, Inc.
2. from Douglas Wine & Spirits Apponaug, Inc. to Peoples Liquor Warehouse-Apponaug, Inc.
3. from PLW Cranston, LLC to Peoples Liquors Warehosue [sic?] of Cranston, Inc.
4. from MAB Liquors, Ltd. To Douglas Wine & Spirits-Cranston, Inc.
5. from Delta Wine & Spirits, Inc. to Douglas Wine & Spirts-Smith Street, Inc.
6. from Douglas Liquors, Inc. to Douglas Wine & Spirits No. Providence, Inc.
7. from Liquor Depot East Providence, Inc. to Douglas Wine & Spirits-East Providence, Inc.
8. from No. Smithfield Wine & Spirits, Inc. to Douglas Wine & Spirits- No. Smithfield, Inc.
9. from CWS Operating Company to Douglas Wine & Spirits-Cumberland, Inc.
10. from Putnam Pike Liquors, Inc. to Douglas Wine & Spirits-44 Inc.
11. from Knights Wine and Spirits, Inc. to Douglas Wine and Spirits Johnston, Inc.

E. On November 17, 2005 the Respondents provided the Department with their name change Certificates issued by the office of the Rhode Island Secretary of State.

F. On December 15, 2005, the Department amended paragraph 4 of Bulletin 2005-2 to clarify additional criteria that do not deem a name "distinguishable" from another name. In that clarification, the Department stated that one of the criteria that would not be considered to distinguish the use of similar names is the addition of a geographic location or place, or a numeric designation (for example, Gourmet Liquors Inc. versus Gourmet Liquors of Providence, Inc. or Gourmet Liquors I, Inc. versus Gourmet Liquors II, Inc.).

G. On December 28, 2005 the Respondents re-submitted their same name changes as described in paragraph V (D) above to the Department.

H. On December 29, 2005, the Department rejected the Respondents' names.

## VI. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Superior Court Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, it is necessary to view the evidence in the light most favorable to the nonmoving party. *Hefline v. Koszela*, 774 A.2d 25, 29 (R.I. 2001). Summary judgment is appropriate if there are no genuine issues of material fact remaining and the moving party is entitled to judgment as a matter of law. *See Id.* The moving party bears the initial burden of demonstrating the absence of questions of material fact. *See Id.* That burden may be satisfied by "submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or

pointing to the absence of such items in the evidence adduced by the parties." *Id.* (quoting *Doe v. Gelineau*, 732 A.2d 43, 48 (R.I. 1999)). In this matter, the parties have stipulated to the facts and it is clear that there are no material facts in dispute regarding the names submitted by the Respondents.

**B. Department's Motion for Summary Judgment**

The Department asserts that the clear and unambiguous language of R.I. Gen. Laws § 3-5-11(b)(1)(vi) prohibits the Respondents from using any term or name identified as a chain or common entity. The Department further asserts that the names as currently being used by Respondents constitute names evidencing a chain or common entity. The Department states that well-established principles of administrative law require that the Department be afforded deference in its administration and enforcement of the statute at issue. The Department further asserts that its guidelines regarding the use of names are reasonable and intended to enforce the statutory mandates in R.I. Gen. Laws § 3-5-11(b)(1)(vi) and because Respondents are clearly in violation of the Department's guidelines as articulated in Bulletin 2005-2 and its amendment, the Respondents' licenses should be revoked or alternatively, a cease and desist order shall be issued to the Respondents to prevent them from using materially similar names as well as a fine not to exceed $10,000 per licensee pursuant to R.I. Gen. Laws § 3-5-11(b)(4).

### C. Respondents' Objection and Cross-Motion for Summary Judgment

The Respondents assert that the Department's interpretation and application of R.I. Gen. Laws § 3-5-11 should be quashed because: (i) the Department has abused its discretion; (ii) the Department's interpretation and application violates the Respondents' First Amendment right to freedom of speech; (iii) there are less drastic means available to achieve compliance with the statute; and (iv) the Department's interpretation and application violates the Respondents' Fifth Amendment rights because it is an illegal taking. Additionally, Respondents claim that the entire statutory scheme that governs R.I. Gen. Laws § 3-5-11 violates the Commerce Clause because it impermissibly burdens interstate commerce and violates the Sherman Anti-Trust Act because it illegally restrains trade and, therefore, prevents competition, which harms consumers. Therefore, Respondents allege that any order against Respondents to cease and desist the use of the Respondents' names would violate the Respondents' rights.

Respondents stress that the reason the Department must not be afforded deference in its interpretation of the statute at issue is because the interpretation violates the Constitution and the statute itself is unconstitutional because it infringes upon the First Amendment rights of the Respondents. The Respondents state that the Department is compounding the constitutional issues by misinterpreting the statute and abusing its discretion and authority in the enforcement of the statute. Respondents maintain that the statute does not articulate the harm associated with from the existence and/or perception of a chain store organization. However, Respondents assume for the purpose of argument that the only harm sought to be avoided is the *misimpression* that a licensee is a chain store or affiliated with another store, and offer other methodology for enforcing the statute. Furthermore, Respondents assert that because the Department would allow the use of the full, legal name of the individual owner associated with the name of the licensee,

the Department is acting arbitrarily in its application. That is, under the current criteria, the Department would allow the use of Kathleen Haronian's Douglas Wine & Spirits-North Providence, Inc. but not Douglas Wine & Spirits-North Providence. The Respondents allege that there is no difference in the two names. Therefore, the Respondents allege the criteria used by the Department to enforce the statute are arbitrary.

Respondents raise constitutionality of the statutes at issue based on violations of Respondents' First Amendment right to freedom of speech, the Fifth Amendment, the Commerce Clause and the Sherman Anti-trust Act, and the Equal Protection Clause. This Decision will discuss legislative intent, statutory construction, and the mandates imposed upon this administrative agency (part of the Executive Branch of government) without infringing upon the determination of constitutionality of statutes which lies solely within the Judicial Branch of government and is well outside the purview of this administrative agency. Additionally, it does not serve judicial economy nor further the purpose of administrative regulation-to enforce statutory mandates- to have an administrative agency rule on the constitutionality of statutes which it is charged with enforcing. This is especially true in the context of this proceeding because the challenge to the constitutionality of the statutes at issue commenced in Federal District Court prior to this adjudication and is currently pending in federal District Court (and is scheduled to go to trial in June 2006). The Rhode Island Supreme Court has stated that:

> [t]he principle that protects an administrative agency from constitutional challenges during the course of a licensing or permit proceeding is based upon the necessity to establish and maintain orderly procedures required for effective implementation of administrative determinations pursuant to § 42-35-15, that review is circumscribed and limited to determinations that the agency itself might properly entertain and consider.

*See Easton's Point Association et al v. Coastal Resources Management Council et al.*, 522 A.2d 199, 202 (R.I. 1987).

D. **Statutory Construction/Legislative Intent**

The Rhode Island Supreme Court has consistently held that it effectuates legislative intent by examining the statute in its entirety and giving words their plain and ordinary meaning. *In re Falstaff Brewing Corp.*, 637 A.2d 1047, 1049 (R.I. 1994). See *Parkway Towers Associates v. Godfrey*, 688 A.2d 1289 (R.I. 1997). The Rhode Island Supreme Court has also established that it will not interpret legislative enactments in a manner that renders them nugatory or that would produce an unreasonable result. See *Defenders of Animals v. Dept. of Environmental Management*, 553 A.2d 541 (R.I. 1989) (citing *Cocchini v. City of Providence*, 479 A.2d 108, 111 (R.I. 1984); *Beaudoin v. Petit*, 409 A.2d 536, 540 (1979); *Raymond Construction Co. v. Bisbano*, 326 A.2d 858, 861 (1974)). In cases where statutory language is ambiguous, the Rhode Island Supreme Court has consistently held that legislative intent must be considered. *Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1134 (R.I. 1998). The statutory provisions must be examined in their entirety and the meaning most consistent with the policies and purposes of the legislature must be effectuated. *Id.* It is also necessary to take into account the scope of the statute and the purpose sought to be accomplished through the enactment of the statute when determining how it is to be construed. *New England Die Co., Inc. v. General Products Co., Inc.*, 168 A.2d 150 (R.I. 1961).

In examining Title 3 of the Rhode Island General Laws, entitled Alcoholic Beverages, it is clear that the legislature intended to regulate many facets of the liquor industry. The chapters of Title 3 of the Rhode Island General Laws include such areas as: Chapter 4-Transportation of Beverages: Chapter 5-Licenses (including state and local licensing provisions, limitations on the number of licenses, manufacturer and wholesaler licenses); Chapter 6-Manufacturing and Wholesale Licenses; Chapter 7-Retail Licenses; Chapter 8- Regulation of Sales; Chapter 9- Adulterated Liquors; Chapter 10-Taxation of Beverages; Chapters 11 and 12-Penalties and

Liabilities and Enforcement of Title; Chapter 13-Malt Beverage Supplier-Wholesaler Agreements; and Chapter 14- The Rhode Island Liquor Liability Act. This comprehensive statutory scheme clearly reflects the legislative intent to control, regulate, penalize, and monitor activities related to liquor. Additionally, R.I. Gen. Laws § 3-1-5 states that "[t]his title shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." R.I. Gen. Laws § 3-2-2 also gives the Department "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and *selling beverages*." (Emphasis added). This authority supervision ties into the Department's regulation in R.I. Gen. Laws § 3-5-1 *et seq.*, entitled Licenses Generally, because the licenses are required for manufacture, sale or importation of beverages (R.I. Gen. Laws § 3-5-1).

The purpose and scope of the statute at issue, R.I. Gen. Laws § 3-5-11(b)(1)(vi) and R.I. Gen. Laws § 3-5-11.1 (prohibiting liquor franchises) must, therefore, be analyzed in the context of this statutory scheme. R.I. Gen. Laws § 3-5-11.1 states that the purpose of the liquor franchise prohibition is to "promote the effective and reasonable control and regulation of the Rhode Island alcoholic beverage industry and to help the consumer by protecting their choices and ensuring equitable pricing." The statutory definition of "chain store organization," and its criteria in R.I. Gen. Laws § 3-5-11(b)(1)(vi) is clear, unambiguous criteria established by the legislature requiring the Department to regulate the sale of liquor by certain licensees in a certain manner-by limiting the term or name identified as a chain or common entity.

The Rhode Island Supreme Court has consistently upheld the Department's authority to regulate the liquor industry. It has long been established that the role of the Liquor Control Administrator (subsequently replaced by the Department) in Rhode Island is that of a "superlicensing board" with a broad and comprehensive power of review. *Hallene v. Smith*, 201

A.2d 921, 924 (R.I. 1964) (de novo review necessary to fulfill intention of Legislature to "provide broad and comprehensive control by the State over the liquor traffic and to vest that control in an administrative body"); *Tedford et al v. Reynolds*, 141 A.2d 264, 267 (R.I. 1958); *Baginski v. Alcoholic Beverage Commission*, 4 A. 2d 265, 268 (R.I. 1939); see *Clark v. Alcoholic Beverage Commission*, 170 A. 79, 80 (R.I. 1934). This authority derives in part from the general supervisory authority in matters related to liquor licensing that is vested in the Department through R.I. Gen. Laws § 3-2-2, which states that "the department has general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, keeping for sale, and selling beverages." Further evidencing the wide powers of supervision and regulation vested in the Department and the scope of Department's authority is R.I. Gen. Laws § 3-1-5 which provides: "this title shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." See *Thompson v. Town of East Greenwich*, 512 A.2d 837, 842 (R.I. 1986). The seminal cases in the area of describing the purpose, scope and necessity of liquor regulation by the Department are *Baginski, Clark*, and *Standard Bottling Company v. Brewster*, 65 R.I. 279 (1940). These post-prohibition cases recognize the well-established need to address the pre-prohibition system of regulation which was an "unsupervised system of local regulation" and a "lack of uniformity" in administering the law, resulting in "grave abuses which, as a matter of common knowledge, seriously affected public welfare." *Baginski* at 181. The Rhode Island Supreme Court has stated that the legislature expressly provided for state control and has adopted a system for administering such control in a manner which it deems the most likely to be productive of the public good. *Bd. of License Commissioners v. Daneker*, 78 R.I. 101, 107 (R.I. 1951). It should be noted that the Rhode Island Supreme Court has also recognized the

Department's ability to review cases on its own initiative pursuant to R.I. Gen. Laws §§ 3-5-21 and 23.

The purpose of prohibitions set forth in R.I. Gen. Laws §§ 3-5-11 and 3-5-11.1 is to create uniformity and consistency in the sales, advertising, supervision, and control of conduct of the business of selling alcohol beverages consistent with the evident purposes of Title 3 of the Rhode Island General Laws in its entirety and R.I. Gen. Laws §§ 3-1-5 and 3-5-11.1. Therefore, the Department is granted clear, unambiguous statutory mandates requiring it to determine whether Class A liquor licensees are operating as a "chain store organization" by using a term or name identified as a chain or common entity and determine an appropriate penalty for such prohibited activity.

## E. Department's Interpretation and Application of Statute

The Department's interpretation of R.I. Gen. Laws § 3-5-11 is not an abuse of discretion and is not selectively applied to Respondents.[2] The Department's interpretation as reflected in Bulletin 2005-2 and its December 15, 2005 amendment clearly sets forth guidelines to allow entities and individuals to distinguish their names to minimize the use of a chain or common entity. The Department clearly stated in its September 21, 2005 Bulletin that the adding of a location to an existing similar name would not be considered a sufficient differentiation of name. However, in defiance of that mandate, the Respondents proceeded to change their names to make them *more* similar to one another by adding locations to the same names-Peoples Liquor Warehouse and Douglas Wine & Spirits. Then, in an act of further disingenuousness, they proceeded to assert that they thought paragraph 4 of Bulletin 2005-2 allowed the use of a "full

[2] The federal District Court stated in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al.*, at 174-175 that "[s]ince 1933, Rhode Island, like many other states, has statutorily prohibited the retail sale of alcoholic beverages by 'chain store organizations.' (*citing* R.I. Gen. Laws § 3-5-11 and referencing *see Granite State Grocers Ass'n v. State Liquor Comm'n*, 112 N.H. 62, 289 A.2d 399, 402 (N.H. 1972) (observing that at least twenty states, plus New Hampshire, restrict the number of alcoholic beverage permits that may be held by a single person or group.)

proper legal name" even though the context of the example set forth in that paragraph was inconsistent with the Respondents' interpretation. The Department clearly intended to apply the "full proper legal name" standard to the name of an individual as opposed the name of a business entity. It is clear from the result of the Respondents' name changes (to make the names more similar) that it was an unreasonable interpretation by Respondents.

The criteria enunciated in the Department's Bulletins clearly sought to inform its licensees and assist them in the enforcement of the statutory mandate while recognizing that some of the licensees had a personal stake in their businesses. For that reason, it is reasonable that the Department allowed the "full proper legal name" of individuals to be attached to the name of the licensee. Furthermore, the use of individual names clearly ties the license to an individual separate and apart from a business entity which is consistent with the requirement in R.I. Gen. Laws § 3-5-11(b)(1)(vi). That is, a business entity name (without reference to an individual's full proper name) is more likely to be deemed a chain or common entity. The Respondents' current names clearly exemplify the exact rationale for requiring distinguishable names in order to prevent the misperception of a chain store or common entity. The names currently used by Respondents are not easily distinguishable, appear to be a chain or common entity and therefore, are clearly in violation of R.I. Gen. Laws § 3-5-11(b)(1)(vi).

**F. Allegations Regarding Unconstitutionality of the Department's Interpretation/ Application**

Respondents assert that because the First Amendment protects Respondents' trade names as speech, the Department's attempt to revoke the Respondents' trade name infringes upon the Respondents' right to freedom of speech. Therefore, Respondents argue R.I. Gen. Laws § 3-5-11(b)(1)(vi) prohibits the Respondents' trade names in violation of the First Amendment. While it is clear that this administrative agency does not have the authority to adjudicate the constitutionality of statutes, it is compelled to address Respondents' constitutional claims

because they have been raised as issues prohibiting the enforcement of R.I. Gen. Laws § 3-5-11(b)(1)(vi). Respondents assert that because their trade names convey more information to the potential consumer than the source of the products sold, the restriction on the trade name constitute an infringement on *pure* speech which should be afforded higher standard of scrutiny than an infringement on commercial speech. Respondents assert that their trade names convey reputation for quality, price and service associated with the name "Douglas Wine & Spirits" and "Peoples Liquor Warehouse;" therefore, the infringement is upon pure speech. The alleged conveyance of quality, price, and service through the trade names at issue are impossible to meaningfully establish in this context.

Assuming *arguendo* that the statute is subject to the analysis articulated in *Central Hudson Gas & Electric Corp v. Public Service Comm'n of New York*, 447 U.S. 557 (1980), it is clear that under the analysis set forth in Section V (D) above, the statute and the Department's application of the statute meet the *Central Hudson* Test:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566. As stated in Sections V (D), the prohibition of franchises is lawful activity and clearly not misleading, and the governmental interest in the regulation of alcoholic beverages generally, and Class A licensees specifically is statutorily mandated and supported by well-established caselaw. Therefore, it clearly advances governmental interests and the restrictions on chain store organizations as applied by the Department is clearly intended to advance the goals to create uniformity and consistency in the sales, advertising, supervision, and control of conduct of the

business of selling alcohol beverages consistent with the evident purposes of Title 3 of the Rhode Island General Laws in its entirety and R.I. Gen. Laws §§ 3-1-5 and 3-5-11.1 specifically. The restriction on the use of similar names clearly furthers the statutory purpose of prohibiting chain store organizations. The names as used by Respondents clearly convey a chain or common entity which is expressly prohibited by R.I. Gen. Laws §§ 3-5-11(b)(1)(vi) and 3-5-11.1.

The undersigned also rejects Respondents assertion that the Department's interpretation of R.I. Gen. Laws § 3-5-11 and rejection of the Respondents' trade names must fail because less dramatic means are available. Respondents suggest that the Department allow the phrase "independently owned and operated" to follow Respondents' names on their signs. The Department has rejected this additional phrase because it still conveys the connection or affiliation of entities. Alternatively, Respondents suggest that they be afforded the opportunity to add the phrase that reads "Not a chain store." It is clear that allowing Respondents to have similar names with qualifying phrases does not fully distinguish the entities in a meaningful way. Furthermore, even if entities are designated to be "independently owned and operated" and/or "not a chain store," the presence of any similar term or name identified as a chain or common entity among entities sends mixed messages to the consumer and is not a reasonable application of that prohibition.

Finally, Respondents assert that R.I. Gen. Laws § 3-5-11(b)(1)(vi) violates the Commerce Clause, the Sherman Anti-Trust Act, and the Equal Protection Clause. For the reasons stated herein regarding the purpose of the statute within the context of the Department's authority to regulate such activity, it is well within the authority of this agency to interpret and apply the statute as described in this matter. The Respondents have not set forth sufficient facts to sustain their allegations of violations of the Commerce Clause, the Sherman Anti-Trust Act and the Equal Protection Act. Specifically, it is not clear how requiring Respondents to change their

name burdens interstate commerce and discriminates against out-of-state commerce because all licensees will be subject to the same criteria. With respect to the Sherman Anti-Trust Act allegations, it is not clear what empirical evidence is being used to support Respondents' conclusions. The Equal Protection Clause violations also are not supported by the facts in this matter.[1] It is clear that the statutory prohibition of a term or name identified as a chain or common entity serves a legitimate governmental interest as decided by the General Assembly in prohibiting chain store organizations as set forth herein.

**G. Administrative Penalty**

Respondents have been afforded ample opportunity to comply with the statutory mandates of R.I. Gen. Laws § 3-11-5(b)(1)(vi) and have deliberately chosen, not only to refuse to comply, but have taken the additional measure of using names that are more indicative of a chain or common entity than prior to the issuance of the Department's Bulletins. It is reasonable to allow licensees the benefit of due process to challenge statutory mandates within the paradigm of the administrative process; but Respondents' actions in this matter clearly evidence not a reasonable availing of the administrative process, but a desire to intentionally violate a clear statutory mandate. It is one thing for the licensees to continue to operate under their former licensed names, but in this matter, Respondents proceeded to change their names to reflect a more compelling example of a chain or common entity. Their explanations regarding using "full proper legal name" ignores the context of the Bulletin and does not demonstrate a good-faith effort to undertake an administrative adjudication to seek relief from statutory mandates but to calculatingly flout the mandate by more egregiously violating it while feigning attempted compliance. Respondents' actions in this matter do not demonstrate the requisite "suitability" qualification required of licensees pursuant to R.I. Gen. Laws § 3-5-10.

It is also troubling that the federal District Court's April 8, 2005 decision in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175 seemingly confirms that Respondents are currently franchisees in violation of R.I. Gen. Laws §§ 3-5-11 and 11.1:

> [a]pproximately seven years ago, W&S, which itself does not hold a Class A license, began enlisting independently-owned liquor stores to operate as its franchisees under the name Douglas Wine & Spirits. The terms of the franchise arrangement are set forth in the Uniform Franchise Offering Circular filed by Wine & Spirits with the Department of Business Regulation and in W&S's standard franchise agreement. Those terms include provisions that authorize W&S to designate geographical territory in which the franchisee may operate; the inventory items that the franchisee is allowed or required to carry; the vendors from which the franchisee may purchase those items; and the layout of the franchisee's store. The franchisee is required to pay an annual franchise fee and to contribute to an advertising and promotion fund controlled by W&S. In exchange, W&S agrees to grant the franchisee exclusive franchise rights within the assigned territory; to help the franchisee train its employees; and to advise the franchisee with respect to advertising, marketing, and other aspects of the franchisees business.

The undersigned Hearing Officer takes notice pursuant to Rule 201 of the Rhode Island Rules of Evidence of the facts stated in April 8, 2005 decision of the federal District Court and is compelled to address the violation as described above. If the Respondents are a party to a franchise agreement, said agreements are declared null and void and illegal as of the effective date of R.I. Gen. Laws § 3-5-11.1, April 1, 2005, and shall be terminated by the franchisor or the franchisee within thirty (30) days of the effective date of this section pursuant to R.I. Gen. Laws § 3-5-11.1(c). Furthermore, upon finding of a violation of R.I. Gen. Laws § 3-5-11.1 by either the franchisor or the licensee, the Department is empowered to set a fine up to the amount of ten thousand dollars ($10,000) per violating franchisor or licensee, revoke the license of the violator or suspend the license of the violator for a period of time to be determined by the Department pursuant to R.I. Gen. Laws § 3-5-11.1 (d). R.I. Gen. Laws § 3-5-11.1 (d) also gives the

Department the power to revoke or suspend the franchise registration in accordance with R.I. Gen. Laws 19-28.1-18 and to order it to cease and desist from all operations that are violative of the provisions of this section. The undersigned would be remiss if she did not address the facts stated in the federal District Court decision regarding the apparent violation of R.I. Gen. Laws § 3-5-11.1. Therefore, since a violation of R.I. Gen. Laws § 3-5-11(b)(1)(vi) has already been determined, it is necessary within the context of this proceeding to inquire further about the apparent violations of R.I. Gen. Laws § 3-5-11.1 in order to craft an effective, meaningful remedy. Additionally, regardless of whether the franchise agreements are still in place, the dissolution of the violating chain store entities pursuant to R.I. Gen. Laws § 3-5-11(b)(4) is a remedy that is provided to the Department and effectively cures the violation, better serves the interests of the Respondents (rather than the revocation of the license as requested by the Department) and enforcement of these specific statutory mandates. Furthermore, it is clear from the language of R.I. Gen. Laws § 3-5-11(b)(1) that only one practice of the six (6) listed have to established in order to adjudicate an entity a "chain store organization." Therefore, it is the undersigned's recommendation that because R.I. Gen. Laws § 3-5-11(b)(4) authorizes the Department to "order the dissolution of the violating chain store entity(s)," it is appropriate to order such dissolution in order to effectuate the statutory mandate of prohibiting chain store organizations, and franchises. For these reasons, the undersigned Hearing Officer recommends that Respondents be ordered to:

1. Pay an administrative penalty of $5,000 per Respondent;
2. Suspend their licenses for a period of ten (10) business days;
3. During the ten (10) day suspension, Respondents shall seek the approval of name change from the Department and cease and desist from

conducting any licensed activity until such time that the Department approves the use of a name for each Respondent.

4. Confirm within ten (10) business days of this Decision whether the facts stated in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175 regarding existing franchise agreements are still true. If said facts are true, and the Respondents are parties to franchise agreements, said franchise agreements are deemed null and void and illegal pursuant to R.I. Gen. Laws § 3-5-11.1(b) and the undersigned further orders the dissolution of the violating Respondents as chain store entities pursuant to R.I. Gen. Laws §§ 3-5-11 (b)(4) and 3-5-11.1(d).

5. Appear before the undersigned on June 29, 2006 at 10:00 am for a status conference related to the status of Respondents' compliance with the terms of this Decision and the process to be utilized to dissolve the chain store entities.

6. The Department may move for additional remedies if the facts pertaining to the status of Respondents' franchise agreements so warrant. Respondents shall be afforded notice and an opportunity to object to said remedies.

## VII. FINDINGS OF FACT

A. The undisputed facts as stated in Section V of this Decision are incorporated by reference as findings of fact herein.

B. The undersigned Hearing Officer takes administrative notice of the fact that Respondents may be a party to a franchise agreement based on the decision of the

federal District Court in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175.

## VIII. CONCLUSIONS OF LAW

A. Respondents' use of their names as proposed to the Department and described in Section V herein constitutes the use of terms or names identified as a chain or common entity and therefore establish a "chain store organization" under R.I. Gen. Laws § 3-5-11(b)(1)(vi).

B. Respondents' use of their names as proposed to the Department and described in Section V herein is a violation of R.I. Gen. Laws § 3-5-11(a).

C. The undersigned Hearing Officer takes quasi-judicial notice of *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175 pursuant to Rule 201 of the Rhode Island Rules of Evidence.

D. The existence of franchise agreements as described in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175 may, if still in existence, constitute a violation of R.I. Gen. Laws § 3-5-11.1.

E. Respondents' violations of R.I. Gen. Laws § 3-5-11 warrant the imposition of administrative penalties pursuant to R.I. Gen. Laws §§ 3-5-11(b)(4) including suspension, a cease and desist order, an administrative penalty, and the dissolution of the chain store organizations.

F. The existence of franchise agreements in which Respondents are parties may constitute a violation of R.I. Gen. Laws § 3-5-11.1 and warrant further inquiry by this Hearing Officer in order to craft an effective, meaningful remedy pursuant to R.I. Gen. Laws § 3-5-11(b)(4) and 3-5-11.1(d).

G. The dissolution of the chain store entities pursuant to R.I. Gen. Laws § 3-5-11(b)(4) is a more effective remedy for the violation of R.I. Gen. Laws § 3-5-11(b)(1)(vi) than the revocation of licenses sought by the Department.

H. As part of the Department's remedy to dissolve the chain store entities, it is necessary to give the opportunity to be heard to aid in the effective dissolution of the chain store entities.

## IX. RECOMMENDATION

For the reasons stated herein, the undersigned Hearing Officer respectfully recommends that the Department's Motion for Summary Judgment be granted and the Respondents' Cross-Motion for Summary Judgment be denied. The undersigned Hearing Officer also recommends that the Respondents be ordered to:

A. Pay an administrative penalty of $5,000 per Respondent;

B. Suspend their licenses for a period of ten (10) business days;

C. During the ten (10) business day suspension, Respondents shall seek the approval of name change from the Department and cease and desist from conducting any licensed activity until such time that the Department approves the use of a name for each Respondent.

D. Confirm, in writing, to the Department within ten (10) business days of this Decision whether the facts stated in *Wine and Spirits Retailers Inc. and John Haronian v. State of Rhode Island et al* at 175 regarding existing franchise agreements are still true. If said facts are true, and the Respondents are parties to franchise agreements, said franchise agreements are deemed null and void and illegal pursuant to R.I. Gen. Laws § 3-5-11.1(b) and the undersigned further orders the dissolution of

the violating Respondents as chain store entities pursuant to R.I. Gen. Laws §§ 3-5-11 (b)(4) and 3-5-11.1(d).

E. Appear before the undersigned on June 29, 2006 at 10:00 am for a status conference related to the status of Respondents' compliance with the terms of this Decision and the process to be utilized to dissolve the chain store entities.

F. The Department may move for additional remedies if the facts pertaining to the status of Respondents' franchise agreements so warrant. Respondents shall be afforded notice and an opportunity to object to said remedies.

Dated May 24, 2006

Neena Sinha Savage, Esq.
Hearing Officer

**ORDER**

I have read the Hearing Officer's Recommendation in this matter, and I hereby take the following action with regard to the Recommendation:

✓ ADOPT
_____ REJECT
_____ MODIFY

Dated: 5/24/2006

A. Michael Marques
Director

**NOTICE OF APPELLATE RIGHTS**

THIS DECISION CONSTITUTES A FINAL ORDER OF THE DEPARTMENT OF BUSINESS REGULATION PURSUANT TO R.I. GEN. LAWS § 42-35-12. PURSUANT TO R.I. GEN. LAWS § 42-35-15, THIS ORDER MAY BE APPEALED TO THE SUPERIOR COURT SITTING IN AND FOR THE COUNTY OF PROVIDENCE WITHIN THIRTY (30) DAYS OF THE MAILING DATE OF THIS DECISION. SUCH APPEAL, IF TAKEN, MUST BE COMPLETED BY FILING A PETITION FOR REVIEW IN SUPERIOR COURT. THE FILING OF THE COMPLAINT DOES NOT ITSELF STAY ENFORCEMENT OF THIS ORDER. THE AGENCY MAY GRANT, OR THE REVIEWING COURT MAY ORDER, A STAY UPON THE APPROPRIATE TERMS.

**CERTIFICATION**

I hereby certify that on this 25th day of May, 2006, a copy of this Decision was sent by first class and certified mail, postage prepaid to

Robert J. Roughsedge, Esq.
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Suite 345
Boston, MA 02210-1736

and by hand-delivery to:

Michael Jolin, Esq.
Deputy Chief of Legal Services
233 Richmond Street
Providence, RI 02903

R B Ellison

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Business Regulation

DIVISION OF COMMERCIAL LICENSING AND REGULATION
233 Richmond Street, Suite 230
Providence, RI 02903-4230
Tel. (401) 222-2416 or (401) 222-2417
TDD: (401) 222-2999 FAX: (401) 222-6654
Web Site: www.dbr.state.ri.us

Elan

September 21, 2005

TO ALL CLASS A LICENSEES & WHOLESALERS:

Enclosed please find an important Department Bulletin highlighting certain types of prohibited practices under Rhode Island General Laws §§3-5-11 and 11.1. Please govern your businesses accordingly. The Department reserves the right to take enforcement action against any licensee who does not conform its activities within the parameters of the law.

If you have any questions regarding the enclosed Bulletin, please feel free to contact me at the telephone number posted above or Executive Counsel Richard Berstein at 222-8241.

Sincerely,

Jeffrey J. Greer
Associate Director

cc: A. Michael Marques, Director
Richard Berstein, Executive Counsel
Rebecca Partington, Department of Attorney General

WSR01277

# BULLETIN

#2005-2

This Bulletin serves to address four (4) key questions relating to the types of practices prohibited by the recent amendments to R.I.G.L. §§3-5-11 and 11.1. These statutory changes eliminate any chain store and alcoholic beverage franchisor/franchisee relationships. This Bulletin is not meant to be an exhaustive list of prohibited practices as set forth in the law, but rather will serve to provide an overview of certain prohibited practices for which enforcement action will be taken. Accordingly, pursuant to the prohibitions set forth in R.I.G.L. §§3-5-11 and 11.1, the following practices are hereby prohibited:

1. common, group, joint or coordinated purchases of wholesale merchandise by more than one (1) licensee or volume discounts granted by wholesalers from orders generated by more than one (1) retail licensee;

2. participation in coordinated or common advertising with one or more licensed Class A alcoholic beverage licensees. Two (2) licensees should not be mentioned in any manner in any advertisement, nor should there be references to the ability to purchase items at more than one (1) store;

3. the placing of orders of product with wholesalers by individuals not a manager, officer or owner of the licensed premises. A Class A licensee cannot have a third party with no managerial or ownership status control the flow of products, promotions and marketing activity for a given store;

4. existence of Class A licensees with the same or materially similar names. By April 1, 2006, each retail licensee will be required to operate under a name totally dissimilar from other Class A licensees with the exception that a full proper legal name may be used as a business name. For example, if there is more than one licensee operating under the name "Smith's Liquors" the name should be changed to a totally dissimilar name or, if the owner is named Smith, the name may be changed to the full legal name of the owner such as "Joe Smith's Liquors," to demonstrate appropriate differentiation. Accordingly, two (2) or more stores currently named in a manner such as "Hank's Liquors of Smithfield" and "Hank's Liquors of Newport" will not be

considered a sufficient differentiation of name. Under separate cover, the Department will soon be notifying all Class A licensees with same or similar names to submit proposed name changes to the Department to secure prior approval of proposed name changes by December 31, 2005, which approval shall not be unreasonably withheld.

The Department encourages all licensees to call with any further questions they may have about operating under R.I.G.L. §§3-5-11 and 11.1. The Department also encourages all licensees to report any violations of R.I.G.L. 3-5-11 and 11.1.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Business Regulation
DIVISION OF COMMERCIAL LICENSING
AND RACING AND ATHLETICS
233 Richmond Street, Suite 230
Providence, RI 02903-4230

December 15, 2005

TO CLASS A LICENSEES WITH SAME OR SIMILAR NAMES:

Attached please find an amendment to paragraph #4 of the Department's Bulletin #2005-2 which serves to clarify the provisions of paragraph #4. Please feel free to call the Department with any questions you may have.

Please note the deadline for submitting a name change remains December 31, 2005. Failure to submit to the deadline requirements could result in disciplinary action by the Department.

Sincerely,

Jeffrey J. Greer
Associate Director

jjg/dm

WSR01448

4. existence of Class A licensees with the same or materially similar names. By April 1, 2006, each retail licensee will be required to operate under a name totally dissimilar from other Class A licensees. In the event that there are two or more Class A licensees who wish to retain the same or materially similar names, the Department will consider such factors as when the license was issued and the original name of the licensee.

Without limiting the authority of the Department in its discretion to determine that a name is not distinguishable from another Class A licensee, a name shall not be deemed "distinguishable" from another existing name if the only difference between the names results from any one or more of the following:

- An article (a, an, the)
- Plural forms of the same word
- Phonetic spelling of the same name or word (for example, Cat Liquors versus Kat Liquors, or Boyz Package Store versus Boys Liquor Store)
- An abbreviation in place of a complete spelling of the name (for example, Northeast Liquors, Inc. versus NE Liquors, Inc)
- A suffix or prefix added to a word or any other deviation from or derivative of the same word (for example, Liquor Specialists, Inc. versus Liquored Specialists, Inc. or Possible Liquor Store, Inc. versus Impossible Liquor Store, Inc.)
- A change in a word or name indicating entity status (for Example, Alcohol Enterprises, Inc. versus Alcohol Enterprises Corporation)
- The addition of a geographic location or place, or a numeric designation (for example, Gourmet Liquors, Inc. versus Gourmet Liquors of Providence, Inc. or Gourmet Liquors I, Inc. versus Gourmet Liquors II, Inc.)
- Differences in punctuation or special characters
- Differences in capitalization
- Differences in whether letters or numbers immediately follow each other or are separated by one or more spaces
- An Arabic numeral representing a number, a roman numeral representing the same number and/or a word representing the same number appearing in the same position within otherwise identical names (for

example, 2 Brothers Packie, Inc. versus II Brothers Packie, Inc. versus Two Brothers Packie, Inc.)

Under separate cover, the Department will soon be notifying all Class A licensees with same or similar names to submit proposed name changes to the Department to secure prior approval of proposed name changes by December 31, 2005, which approval shall not be unreasonably withheld.